## MOLACEK et al. v. WHITE et al.

No. 2721.　Opinion Filed March 12, 1912.

Rehearing Denied April 16, 1912.

(122 Pac. 523.)

1.　**MUNICIPAL CORPORATIONS—Departments—Board of Education.** Under section 8016, Comp. Laws 1909, the board of education in cities of the first class is vested with the authority to establish a high school whenever, in its opinion, the educational interests of the city demand it, and to exercise the sole control over schools and school property of the city; and it cannot abdicate the power and authority so vested to the electors of the district, and the courts are without jurisdiction or authority to assume it.

2.　**INJUNCTION—Mandamus—Subjects of Relief—Acts of Officers—Board of Education.** Plaintiffs, in their petition for a writ of mandamus against a school board, pleaded that, prior to an election, duly called, for the purpose of voting bonds for the erection of a high school, the board of education met in special session and passed a resolution which provided for the location of the proposed building upon a certain designated lot; that the said bonds would not have been voted by the electors of the said district if such resolution had not been passed; that after the election in which the bonds were voted, and after they had been disposed of, the board procured a different site, and was proceeding to erect the building thereon. The prayer was for injunction and mandamus, both of which, over demurrer of defendants, were allowed. **Held,** error.

3.　**MANDAMUS—Nature of Remedy—Acts of Officers—Discretionary Acts.** When a discretion is vested in a public officer, the courts will by mandamus compel him to exercise that discretion, but will not direct how it shall be done, or what conclusions or judgment shall be reached.

(Syllabus by the Court.)

*Error from District Court, Murray County;*
*Albert Rennie, Special Judge.*

Action in mandamus by J. B. White and others against T. E. Molacek and others as the Board of Education of the City of Sulphur. Judgment for plaintiffs, and defendants bring error. Reversed and remanded, with instructions to dismiss petition.

Molacek et al. v. White et al.

*J. F. Sharp, George M. Nicholson,* and *Devereux & Hildreth,* for plaintiffs in error.

*John H. Casteel* and *C. N. Allen,* for defendants in error.

DUNN, J.   This case presents error from the district court of Murray county, and is an action in mandamus, brought by the defendants in error, as plaintiffs, who allege that they are electors and resident citizens, taxpayers, and property owners, having children of school age and living within the city of Sulphur, and that the defendants, who appear in this court as plaintiffs in error, constitute the board of education in and for the said city.   The purpose of the action is to secure a writ of mandamus, commanding defendants to acquire title to a certain block of land in the city of Sulphur and to erect thereon a high school building, using therefor the sum of $29,000 held by said board as the proceeds of certain bonds voted at an election held in the said city for that purpose.   Pending the hearing and determination of this case, the court granted a restraining order or injunction to hold the matter *in statu quo,* and to prevent the board from using said fund in such a manner as to preclude it from carrying out any order or judgment which might be made in the main action.

The facts out of which the controversy arose are stated in plaintiffs' second amended petition, and are, in effect, that on March 2, 1909, the said board of education initiated a proposition to erect within the city of Sulphur a high school; that pursuant thereto an election was called by the said board for the issuance of $60,000 in bonds; that the electors by their votes rejected the proposition; that thereafter the said board, on or about the 11th day of May, 1909, initiated a second proposition and submitted to the electors of the city the question of voting $54,000 in bonds for several different purposes, among others for the purpose of purchasing a site and erecting a high school building; that during the canvass in this election it became apparent that the proposition thus submitted would likewise be rejected, and the said board, being made acquainted

with this sentiment, and being informed and 'believing that, unless a definite site for the high school should be selected which would meet with the approval of a sufficient number of the qualified electors, the proposition submitted would again fail, thereupon, and prior to the day of the election, met in called session, at which there was offered and adopted a resolution providing that the high school would be located on block 36 of the city of Sulphur, on a plat of ground known as the Howerton block, and that the sum of $29,000, provided for in the bond election which was to be held the next day, should be spent on the said block, or so much thereof as the board might decide necessary; that by reason of said resolution, and persuaded by its terms, a sufficient number of the qualified electors of the said city voted in favor of the said bonds. The petition then averred that the said board of education had taken no steps whatsoever looking toward carrying out the trust imposed upon it, and had failed and refused to purchase the site, and wholly failed and refused to erect thereon a high school building; but that after the filing of the original petition in this case certain members of the said board became active in seeking to thwart the will of the people in said city, and selected, in lieu of block 36 of the Howerton site, a certain other tract, known as the Bonneau lot, for the location of the said building, and that the said board claims to have purchased the said Bonneau lot, and to have caused plans and specifications prepared for a school building to be located thereon, and is proceeding with the intention of appropriating and using the $29,000, derived as aforesaid, in the erection of a high school building on said lot. The petition also contains a number of averments showing the greater desirability of the Howerton tract and the inadequacy of the Bonneau lot for the said building, and ends with a prayer for an injunction to restrain other action and a writ of mandamus, commanding the board to acquire title to the Howerton block, and to immediately erect thereon a suitable high school building with the funds provided therefor.

To this petition, the defendants demurred on a number of grounds, which demurrer was overruled by Judge R. McMillan. A trial was had before Special Judge Albert Rennie, Esq., resulting in a judgment for plaintiffs, in which the said board was ordered to proceed at once to erect on the said Howerton block a suitable high school building, and to spend in the purchase thereof the sum of $29,000, and perpetually enjoining said board from appropriating said fund, or any part thereof, for any other purpose, except as therein provided. After the filing and denial of a motion for new trial, the cause has been lodged in this court for review.

As will be seen from the statement, the question presented to us is: May a board of education, charged, by virtue of its public office, with the duty and discretion of locating a public high school building, make an enforceable contract or pledge to the electors of the municipality, independent of the ballots, that if they will vote bonds to construct the same it will, as a consideration therefor, erect it upon any particular tract of ground, and after having made the pledge, and the electors relying thereon have voted the bonds proposed, is the board, in the exercise of its discretion, by reason of the resolution, contract, or pledge which it made, precluded from then erecting the building upon another and a different site than the one previously selected? Counsel for both parties agree that this is the controlling question in the case.

Section 8016, Comp. Laws 1909, provides:

"The board of education shall have power to elect their own officers, except the treasurer, to make their own rules and regulations, subject to the provisions of this article; to organize and maintain a system of graded schools; to establish a high school whenever, in their opinion, the educational interests of the city demand the same; and to exercise the sole control over the schools and school property of the city."

McQuillan on Municipal Corporations (volume 1, sec. 382, p. 842) says:

"Contracts and ordinances relating to any municipal function which embarrass in any way the power of regulation of public affairs are *ultra vires;* for the municipal corporation can-

not in any manner divest itself of its power to control and regulate at all times everything within the domain of its jurisdiction. The adjudications present numerous instances of ordinances and contracts in derogation of the police powers which are uniformly declared void under this principle. Such powers belong emphatically to that class of objects which demand the application of the maxim, *'Salus populi suprema est lex'*; and they are to be attained and provided for by such appropriate means as the discretion of those who officially represent and act for the municipal corporation may devise from time to time. The discretion can no more be bargained away than the power itself."

In addition to the authorities which the author cites in support of the text, we note the following: *State ex rel. Howell County v. Justices of Howell County Court,* 58 Mo. 583; *Colburn v. Board of Com'rs of El Paso County et al.,* 15 Colo. App. 90, 61 Pac. 241; *Edwards v. City of Goldsboro,* 141 N. C. 60, 53 S. E. 652, 4 L. R. A. (N. S.) 589, 8 Ann. Cas. 479; *City of Austin v. Nalle,* 85 Tex. 520, 22 S. W. 668, 960; *Ardrey et al. v. Zang* (Tex. Civ. App.) 127 S. W. 1114; *Kendall et al. v. Frey et al.,* 74 Wis. 26, 42 N. W. 466, 17 Am. St. Rep. 118; *Gale v. Village of Kalamazoo,* 23 Mich. 344, 9 Am. Rep. 80; *Spence v. Harvey,* 22 Cal. 336, 83 Am. Dec. 69; *McCortle v. Bates et al.,* 29 Ohio St. 419, 23 Am. Rep. 758; *Hare v. Phaup,* 23 Okla. 575, 101 Pac. 1050, 138 Am. St. Rep. 852.

In the case of *Edwards v. City of Goldsboro, supra,* it appeared that, in consideration of certain funds subscribed to the city, the authorities promised to locate a city hall and market house on certain lands adjacent to the plaintiff's property. On the failure of the city to erect the city hall in accordance with its contract, plaintiff brought mandamus to compel the same. The lower court denied the writ, and the Supreme Court of the state, in a most learned and exhaustive opinion, affirmed the judgment, and, among other things, said:

"The statute provides that the authorities of a town, whether commissioners or aldermen, shall make such orders for the disposition or use of its property as the interest of the town may require. Revisal 1905, sec. 2916. Judge Dillon, referring to the general duty of municipal officers with respect to the affairs

which they have in charge, says: 'Powers are conferred upon municipal corporations for public purposes; and as their legislative powers cannot * * * be delegated; so they cannot, without legislative authority, express or implied, be bargained or bartered away. Such corporations may make authorized contracts; but they have no power, as a party, to make contracts or pass by-laws which shall cede away, control, or embarrass their legislative or governmental powers, or which shall disable them from performing their public duties. The cases cited mark the scope and illustrate the application of this salutary principle in a great variety of circumstances, and, for the protection of the citizen, it is of the first importance that it shall be maintained by the courts in its full extent and vigor.' I Dillon, Mun. Corp. (4th Ed.) p. 156, sec. 97. It will be seen, therefore, that public office in a city is a public trust to be administered for the equal benefit and advantage of all citizens of the municipality, and the governing body will not be permitted to contract at any time so as to deprive itself of the free exercise of its judgment and discretion in providing for what may afterwards turn out to be the best interest of all citizens alike, and especially will it not be allowed, by any obligatory agreement, to discriminate in favor of one citizen or class of citizens as against another entitled to equality of privilege and benefit, even for a valuable consideration. It must at all times retain freedom of judgment, so that its decisions will be influenced only by a regard for the public welfare. We take it that any contract by which it should be attempted to prevent the city authorities from deciding impartially on a matter affecting the general welfare would be unenforceable. If public trustees or officers may, by contract, divest themselves of any portion of the essential powers intrusted to them, they may just as well alienate all of them, though by degrees, and thus eventually abdicate the exercise of every governmental function. Such agreements are therefore contrary to the true principles upon which society is founded and subversive of all well-regulated government. These propositions would seem to be self-evident."

The case of *Ardrey et al. v. Zang, supra,* from the Court of Civil Appeals of Texas, presented substantially the following facts: The board of education of the city of Dallas, by resolution, provided for the submission to the electors of the said city the proposition of voting a $200,000 bond issue, for the purpose of educational improvements, schoolhouses, etc., one

of which was a four-room building, a site for the same to be selected at a point known as Oak Cliff; that thereafter, and prior to the election, the board of education, over the signature of its members and officially, placed in the hands of the voters a circular which contained the statement tantamount to a renewal of or additional promise to construct the said schoolhouse at that point. After the election, it developed that the officials having charge of the fund were about to divert so much thereof to other purposes that the Oak Cliff school building could not be built. A suit was brought, setting up the foregoing facts, and asking an order of injunction to prevent such diversion; the claim for relief being based upon the proposition that after the election, under the facts as stated, the board had precluded itself from the exercise of any discretion in the matter resulting in a failure to construct the schoolhouse as promised. In considering the propositions presented, the court in reversing the action of the trial court allowing the relief prayed for, speaking through Chief Justice Rainey, said:

"Having no powers in regard to the raising of money, what effect did its representation to the board of commissioners, relative to the issuance of bonds or the representations made to the voters after the election was ordered held and before the holding thereof, have in controlling their action in disbursing the fund? We think none. The representations were not embodied in the proposition submitted by the commissioners to the people to vote upon. The commissioners were not bound to submit the exact proposition of the board of education, but they had the right to submit such a proposition as they deemed best; and they did submit to the people the proposition whether or not bonds should issue 'for the purchase of grounds and the construction and erection of grade school buildings therein for the city of Dallas.' This proposition did not specify any particular piece of ground to be purchased, nor any particular part of the city where it was to be located. The proposition of the commissioners was plain and unambiguous, and from it the voters had a right to expect that the money arising from the bonds would be used in the purchase of grounds for the erection, etc., for school buildings; but, as to any particular site being purchased in any particular location, they could only trust to the discretion of the board of education for the selection of any such

site. So long as the board of education was acting within the terms of the proposition submitted by the commissioners and ballotted on by the people—that is, was using the funds derived from the sale of the bonds for purchasing sites and erecting buildings thereon—it was acting within the scope of the power conferred on it by the city charter, and there was no legal diversion of the funds, and the courts should not interfere by enjoining the acts of the board in exercising its discretion in complying with the proposition submitted to the voters. The case of *City of Austin v. Nalle,* 85 Tex. 520, 22 S. W. 668, 960, was an action by Nalle to annul certain bonds issued by the city of Austin, and to restrain the collection of the tax for the payment thereof. In the ordinance passed for the issuance of said bonds and providing for the levy of a tax, one of its provisions was that said bonds should not be sold for less than par. After the election, the city council repealed this provision, and the bonds were placed upon the market at 95 cents on the dollar and sold at that price. It was alleged, in substance, that the vote in favor of the bonds was induced mainly by representations made to the voters that none of the bonds should be sold below par, and this was urged as one ground for the injunction. In passing on this contention, Mr. Justice Gaines, delivering the opinion, said: 'It is now insisted that by reason of these facts it was illegal to repeal the provision and to sell the bonds at less than their face value. The proposition submitted at the election contained no condition limiting the price at which the bonds should be disposed of; and the citizens who voted at the election must be held to have known that the ordinance which had been passed, limiting the price, was subject to repeal by the council which passed it, or by any future council. Conceding, for the sake of argument, that we could inquire into an election held strictly according to the terms of law, we are of opinion that we could not set it aside by reason of any fraudulent representations that may have been made to the electors in order to procure their votes. Having a plain proposition submitted to them, the voters must be presumed to know its meaning and effect, and to act at their peril; and, in the absence of bribery or other like corrupt influence, in a proceeding affecting the validity of the election, no inquiry as to their motives can be permitted.' "

Judge Cooley, at that time a member of the Supreme Court of Michigan, in the case of *Gale v. Village of Kalamazoo, supra,*

discussing a contract similar in principle to the one in the case at bar, said:

"It will not do to say of such a contract that it must be assumed to have been reasonable in view of the actual condition and wants of the village, and of its probable growth and future needs. What would be thought proper for the village this year might be found worse than useless the next; and no official prescience could determine with absolute or even tolerable certainty what changes a few years might work. Indeed, it is impossible to predicate reasonableness of any contract by which the governing authority abdicates any of its legislative powers, and precludes itself from meeting in the proper way the emergencies that may arise. Those powers are conferred in order to be exercised again and again, as may be found needful or politic; and those who hold them in trust to-day are vested with no discretion to circumscribe their limits or diminish their efficiency, but must transmit them unimpaired to their successors. This is one of the fundamental maxims of government, and it is impossible that free government, with restrictions for the protection of individual or municipal rights, could long exist without its recognition."

The validity of the election is not assailed. The contest is waged by both parties, not to destroy the election, but to affirm its validity, and to secure the fruits thereof, on the theory that the election is valid. The citizens, taxpayers, and electors of the district who appear as plaintiffs in this suit insist in their brief that it is their right, since the bonds have been voted under the pledge made by the board, to locate the school building at a certain point, and to have the same carried out in exact accord with the terms thereof. The force of their contention appears to be that the board, having passed the resolution, had thereby exercised and exhausted its discretion and legislative authority, and had placed itself in a position where it could not exercise it again; that in thus offering in advance of the election to construct the building on the site mentioned, and the electors having accepted the proposition, that the subject-matter of the contract was legal, and the delivery of the votes, under which the bonds were carried, was an adequate, competent consideration, sufficient to compel, at the hands of the court, if need be, specific

performance thereof.    As we view it, the statement is suffi-
cient to show the untenability of the claim.    The law places
the management of the school affairs in this board; the member-
ship thereof is elected with this in view; but if the suit of plain-
tiffs in this cause should and could be maintained the board's
power and discretion, which, under the law, it was elected to
exercise, would, in this particular case, have been by it placed
in the body of the electors of the district, or else in the hands of
the court, in neither of which is it placed by law.

That the agreement made by the board with the voters was
*nudum pactum, ultra vires,* against public policy and void, is
clearly the law of the land, which these plaintiffs must be held
to have known when they acted under it.    They must be held
to have known that the board lacked the power to bind itself
by what it did, and that its promise was unenforceable; that in
once acting in deciding the location it did not exhaust, but yet
retained, full, untrammeled power to act again and again, as its
sound discretion dictated.    The proposition submitted was one
to vote bonds for high school purposes; and the electors, when
they went to the polls, must be held to have known that when
the bonds were voted the location of the building was a matter
which the law had placed for determination in the hands of the
board of education, and that the same was not subject to con-
trol, either by the electors as a result of a pre-election pledge,
or by the courts, and that the law is that, when a discretion is
vested in a public officer, courts, by mandamus, may compel him
to exercise it, but that they will in no instance direct how it shall
be done, or in what manner the duties shall be carried out.    *Nor-
ris et al. v. Cross,* 25 Okla. 287, 105 Pac. 1000; *State ex rel.
Best et al. v. Jones et al.,* 155 Mo. 570, 56 S. W. 307; Wood on
Mandamus, etc. (3d Ed.) pp. 66, 67; Merrill on Mandamus,
sec 69; 26 Cyc. 281.

We are not unmindful of the representations made and set
forth in plaintiffs' petition and in their counsels' brief which, if
true, are cogent reasons why the board of education should erect
the high school building upon the block desired by plaintiffs.

No public officer should exercise his public functions to his personal and private gain, to the detriment of the public; but the fact that the building will be more accessible to some member of the board than it will be to others or other citizens is not a good reason why, in the exercise of an honest judgment, the same should not be so located. The building proposed will doubtless stand for many years; and the board has a right, in locating it, to take into consideration the future prospective, growth of the city, and to call upon all loyal citizens to abide a temporary inconvenience, in order to afford and secure a permanent and lasting good.

From the foregoing observations and the authorities, which we deem most satisfactory, it will be seen the judgment of the trial court must be reversed, and the cause is remanded, with instructions to dismiss the petition.

All the Justices concur.