MOORE, County Judge, et al. v. COFFMAN et al. (No. 8530.)*

(Court of Civil Appeals of Texas. Ft. Worth. June 24, 1916. Rehearing Denied Oct. 14, 1916.)

1. COUNTIES ⊛⚊196(3)—ERECTION OF BRIDGE —SUIT BY TAXPAYERS.

Individual taxpayers may sue to restrain the threatened erection of a bridge by commissioners' court at a crossing different from that designated in proceedings resulting in issuance of bridge bonds, where taxes therefor would be a lien upon their property; their interest being a peculiar one different from that of nontaxpayers or the public generally.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 308; Dec. Dig. ⊛⚊196(3).]

2. BRIDGES ⊛⚊18—COMMISSIONERS' COURT— POWERS.

Under the general power given to commissioners' courts by article 2241, Vernon's Sayles' Ann. Civ. St. 1914, to "build bridges and keep the same in repair," general discretion is vest-

ed in the members of that court to determine when and where bridges shall be constructed in their county, and such discretion, honestly exercised, is not reviewable.

[Ed. Note.—For other cases, see Bridges, Cent. Dig. § 6; Dec. Dig. ⏀⇒18.]

3. **BRIDGES ⏀⇒18 — COMMISSIONERS' COURT — DISCRETION AFFECTED BY CONTRACT.**

Under such statute members of a commissioners' court may not deprive themselves by any notice, contract, agreement, or otherwise, of the power to determine the location for the erection of bridges built by them.

[Ed. Note.—For other cases, see Bridges, Cent. Dig. § 6; Dec. Dig. ⏀⇒18.]

4. **COUNTIES ⏀⇒195—POWER OF COMMISSIONERS' COURT—LOCATION OF COUNTY BRIDGE AT UNAUTHORIZED LOCATION—"NEAR."**

Under articles 605, 606, Vernon's Sayles' Ann. Civ. St. 1914, as to the issuance of county bonds, providing that in submitting the proposition for the issuance of bonds the commissioners' court shall specify the purpose for which the bonds are to be issued, the commissioners' court cannot divert the proceeds of bonds issued for a bridge "at or near" a certain crossing to the construction of a bridge at another crossing five or six miles away; the latter crossing not being "near" the designated one.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 307; Dec. Dig. ⏀⇒195.

For other definitions, see Words and Phrases, First and Second Series, Near.]

Appeal from District Court, Knox County; Jo. A. P. Dickson, Judge.

Suit by W. W. Coffman and others against W. M. Moore, County Judge, and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

Milam & Wheat, of Seymour, and Speer & Brown, of Ft. Worth, for appellants. D. J. Brookreson, of Benjamin, for appellees.

CONNER, C. J. W. W. Coffman, joined by 15 other property tax paying voters of Knox county, brought this suit against the commissioners' court of the county named, and the county judge, and commissioners individually, for the issuance of a writ of injunction restraining the defendants and each of them from diverting the proceeds of a certain bond issue, and from applying such proceeds to the erection of a certain bridge across the Brazos river. It was alleged, in substance, that shortly prior to the 14th day of June, 1915, the plaintiffs had prepared, or caused to be prepared, a petition asking for an election to be held in Knox county, Tex., which they and each of them signed, and which they circulated among the citizens of said Knox county, thus procuring the signatures of some 200 other qualified taxpaying voters and citizens, praying for the call of an election to determine whether Knox county should issue bonds for the purpose of erecting two bridges on the Brazos river, one of which was to be at the "Brock crossing" and the other to be at the "Bill Coffman crossing" on said river. It was further alleged that this petition was on said 14th day of June duly presented to the commissioners' court of Knox county at a

regular term of the court, and after due consideration of the same said court ordered that an election be held on the 24th day of July, 1915, at which the following proposition should be submitted:

"Shall the commissioners' court of the county of Knox be authorized to issue bonds of said county in the sum of $40,000, payable in 40 years after date, with option of redeeming same at any time after 10 years from date, bearing interest at the rate of 5 per cent. per annum, payable annually, and to levy a tax sufficient to pay the interest on said bonds, and create a sinking fund sufficient to redeem them at maturity, for the purpose of constructing two bridges across the Brazos river, one west of Knox City at or near the Brock crossing, the other north of Goree, at or near the Bill Coffman crossing on said river."

It was provided by the commissioners' court that a copy of the order of election signed by the county judge of the county should serve as a proper notice of the election, and the county judge was directed to cause said notice to be posted up at the places designated for holding the election in accordance with law at least 30 days prior to its date, and it was alleged that notices of such election had been duly signed, issued and posted, as provided in the order of the commissioners' court, and that the notice specified that the election was:

"For the purpose of constructing two public bridges across the Brazos river, one west of Knox City at or near the Brock crossing, the other north of Goree, at or near the Bill Coffman crossing, on said river, in said county, as named in the order of said commissioners' court, made and entered on said date, at a regular term thereof."

It was further alleged that the Bill Coffman crossing on the Brazos river was located near the residence of Bill Coffman, one of the first settlers of Knox county, and north of the town of Goree; that such crossing was well known and had been so designated for many years, and that it was the purpose of the petitioners to have the bridge erected at this crossing and at the Brock crossing, and at no other crossing; that the petition for the election was signed and circulated, as before stated.

It was further alleged that in reliance upon the designation of the places where the bridges were to be erected, and especially upon the designation of the Bill Coffman crossing as stipulated in the orders of the commissioners' court, and in the notices for the election, the petitioners used their best efforts and influence to secure the issuance of the bonds mentioned, and voted personally for the same and did much personal work in the interest of the election; that they would not have so done had they not believed that one of the bridges would be located at the Bill Coffman crossing. It was further alleged that in pursuance of the order, the election was held, and that such election resulted in the proposition for the issuance of the bonds being carried, and that orders so

declaring the result of the election were duly entered upon the minutes of the commissioners' court. It was further alleged that thereafter, on the 9th day of November, 1915, the commissioners' court, at a regular session, duly passed an order authorizing the issuance of said bonds as provided by said election and by its previous orders, and also at said time duly levied and ordered assessed the proper tax to pay the interest on the same and to create a sinking fund as required by law. It was charged that the court was proceeding to have said bonds marketed, and that the taxes levied for their payment would fix a lien upon the real estate and property of the plaintiffs for at least 40 years to come. It was further charged that it was the intention and purpose of the commissioners' court, as openly expressed by them, not to erect a bridge at the Bill Coffman crossing, but to divert a large portion of the proceeds from the sale of said bonds when received by them to the erection of a bridge over the Brazos river at the "Decker or McQuistion crossing," located north of the town of Munday, and some five or six miles from the Bill Coffman crossing.

The defendants answered by general demurrer, general denial, and specially that the commissioners' court of Knox county had ascertained that the said Coffman crossing was not a desirable place for putting said bridge, and had determined that the point about five miles up the river from the Coffman crossing, at the Decker or McQuistion crossing, was, in the opinion of said commissioners' court, a better crossing, and would serve a greater percentage of the property tax paying and traveling public of Knox county, and that in the exercise of their sound discretion, and acting in the light of their investigation and judgment upon said matter, and within the scope of their authority, they had determined to build one of said bridges at said Decker or McQuistion crossing.

Defendants' general demurrer was overruled, and the cause on its merits was submitted to the court without the intervention of a jury, and judgment was rendered for the plaintiffs directing the issuance of a permanent injunction against the use of any part of the proceeds of the bond issue in question to the construction of the bridge at the Decker or McQuistion crossing. From this judgment, the defendants have duly appealed.

The facts are admitted to be substantially as alleged in the plaintiffs' petition, there being no complaint of any irregularity in any of the proceedings above detailed, appellants' only contentions here being: First, that the plaintiffs show no such interest as entitles them to sue; and, second, that the matter of building bridges and the proper location thereof is vested by law in the discretion of the commissioners' court, and that it was within their power and discretion aft-

er investigation, as alleged by them in their answer, and in an exercise of their sound discretion, to erect one of the bridges for which the bonds were authorized at the McQuistion or Decker crossing instead of at the Bill Coffman crossing. These questions are presented both on the facts of the case and by complaint of the action of the court in overruling the appellants' demurrer to the plaintiffs' petition.

[1] Addressing ourselves to the question first presented, the general rule is undoubtedly as appellants assert it; that is, in courts subject to the common law no action generally lies to restrain the performance of a public right at the suit of an individual who has not suffered, or is not threatened with some damage peculiar to himself. For a special damage resulting from the invasion of a right enjoyed by a party in common with the public the law affords him a remedy by private action, but if the damages he suffers are only such as are common to all, the action must be brought by the lawfully constituted guardian or guardians of the public interest, with exception, perhaps, as here in this state, that private persons may enforce a public duty not due to the government as such without the intervention of the governmental law officer. See Kimberly v. Morris, 87 Tex. 637, 31 S. W. 808; City of San Antonio v. Strumberg, 70 Tex. 366, 7 S. W. 754; Wood v. City of Victoria, 18 Tex. Civ. App. 573, 46 S. W. 284; Hill v. Roach, 26 Tex. Civ. App. 75, 62 S. W. 959; Acheson v. D. & S. Ry. Co., 140 S. W. 467; Owens v. Varnell, 145 S. W. 256. It may be true, and doubtless is true, that the public at large— the citizenship of the county generally—is alike interested in and affected by the erection and construction and use of a public bridge over a river; its evident purpose being for the use of all citizens alike. But is it true that all citizens alike—the public generally—have the same interest and are affected in the same way and to the same extent by the issuance of bonds by a county and the imposition of the necessary tax for their payment? We think not. The public generally includes many persons without property subject to taxation, and who have and feel no interest in the amount or imposition of tax levies by the properly constituted authorities. The author of Cyc. (22 Cyc. p. 767), after referring to cases presenting a contrary view, further says:

"Many cases, however, hold that injunction is a proper remedy to prevent the levy and collection of an illegal tax, and that the taxpayers similarly affected may unite in bringing the suit, even though the remedy of each is perfect at law, and they have no common property that is affected."

The author cites in a note to the text cases from Illinois, Indiana, Iowa, Kansas, Ohio, Virginia, and West Virginia. The cases of Ardrey v. Zang, 60 Tex. Civ. App. 295, 127 S. W. 1114, and Stratton v. Commissioners' Court of Kinney County, 137 S. W.

1170, were both cases determined by our own courts and similar in character to the case now before us. In both of these cases the plaintiffs were individual taxpayers complaining as here. In neither case does it appear that the right of the plaintiff to so sue was questioned, but the point, if deemed well founded, could hardly have escaped notice by the parties and by the Courts of Civil Appeals, and by the Supreme Court, to which the cases were taken upon applications for writs of error. Inasmuch, therefore, as the plaintiffs in this suit, under the allegations of the petition, will be directly and continuously affected to their pecuniary injury by the issuance of the bonds mentioned, and the levy and collection of the tax to be assessed for the payment of the bonds, we are of the opinion that they show such interests as entitle them to maintain this suit.

Appellants present their further contention in the following proposition, viz.:

"While it is the duty of the commissioners' court to submit to the voters for their determination whether or not the commissioners' court shall issue bonds of the county for the purpose of building bridges, yet the manner and place of the building of such bridges is a power and duty invested by law in the commissioners' court, and said powers cannot be delegated to the voters of said county or to any other person. The place at which such a bridge is to be constructed is a matter resting in the sound discretion of the commissioners' court, and such court cannot, by contract, representation, or other act, divest itself of the power or duty to exercise such discretion in the interest of the citizens generally of the county which they represent. Appellees' petition, seeking, as it did, to deny to the commissioners' court of Knox county the right to exercise such discretion, in the interest of the citizens of that county, states no cause of action and a general demurrer thereto should have been sustained."

And the following authorities were cited as supporting the proposition quoted: Vernon's Sayles' Texas Civil Statutes, arts. 605, 606, 610, and 2241, § 4; State v. Swisher, 17 Tex. 441; Ex parte Mitchell, 177 S. W. 953; Ardrey v. Zang, 60 Tex. Civ. App. 295, 127 S. W. 1114; Molacek v. White, 31 Okl. 693, 122 Pac. 523; Martin v. Mayor, 1 Hill (N. Y.) 546; 1 Dillon on Municipal Corporations (4th Ed.) page 156.

It was agreed between the parties on the trial that:

"The commissioners' court of Knox county, after the election had been held and the result declared, made a thorough investigation for the purpose of determining where the bridge in controversy should be located, and thinking it within their sound discretion, and exercising the same, determined that the Decker or McQuistion crossing on the Brazos river in Knox county was the most desirable location for said bridge, and would serve a greater number of people of the county than any other place on the Brazos river within six or seven miles."

We are thus squarely presented with the question of whether the facts so stated bind the said commissioners' court in such a way as to deprive it of the power and right, after the proposition was duly carried by the electors of the county, to employ, in the exer-

189 S.W.—7

cise of their sound discretion, the proceeds of the bond issue so carried at said election, in the construction of a bridge at any other place than that designated in said order? We are of opinion that the question noted must be answered in the affirmative, and that appellants' contentions to the contrary must be overruled.

[2, 3] By article 2241, Vernon's Sayles' Texas Civil Statutes, commissioners' courts of this state have been given power, and it is made their duty, among other things, to "build bridges and keep the same in repair." And under this general power we think it is not to be doubted that the general discretion is vested in the members of that court to determine when and where bridges shall be constructed in their county, and in the effort to exercise the power and duty so conferred we think the full force of appellants' contention and authorities may well be applied. In such case it may well be said that no individual citizen or collection of citizens can complain of an honest effort to exercise the power and duty so given. Nor, indeed, could the said commissioners' court deprive themselves of such powers by any notice, contract, agreement, or otherwise, nor avoid the performance of the duties so vested in them, and if the question in this case was simply whether, under all of the circumstances, it was advisable and to the interest of the greater number of the citizens of Knox county to construct a bridge at the Decker or McQuistion crossing, rather than at or near the Bill Coffman crossing, we would have no difficulty, but, as we conceive it to be, the question here is one of altogether different import. The question here is whether the commissioners' court is authorized to apply all or any part of the proceeds of the bonds described in the plaintiffs' petition to the building of a bridge at any other point or points than those specified in the order and notices of the election? In an exercise of the general power to build bridges as conferred by article 2241, the general fund of the county would be applied, but it is clear that no bond or bonds could be issued for that purpose; for in the title and chapter (title 18, c. 1, Vernon's Sayles' Texas Civil Statutes) relating to the issuance of bonds it is specially provided that:

"It shall be unlawful for the commissioners' court of any county, or the city or town council of any incorporated town or city in this state, to issue bonds of said county, or town or city, for any purpose authorized by law, unless a proposition for the issuance of such bonds shall have been first submitted to a vote of the qualified voters, who are property taxpayers of said county, town or city; and unless a majority of the said qualified property taxpayers, voting at said election, be in favor of the proposition for the issuance of bonds, then the said bonds shall not be issued. If the proposition for the issuance of bonds be sustained by a majority of such property taxpayers, voting at such election, then such bonds shall be authorized and shall be issued by such commissioners' court, or city or town council."

The next article (606) provides that;

"The proposition to be submitted for the issuance of bonds shall distinctly specify the purpose for which the bonds are to be issued, the amount thereof, the time in which they are payable, and the rate of interest; and all voters desiring to support the proposition to issue bonds shall have written or printed upon their ballots the words, 'For the issuance of bonds,' and those opposed shall have printed upon their ballots the words, 'Against the issuance of bonds.'"

[4] It was by virtue of these articles alone that the commissioners' court of Knox county was authorized to issue the bonds in question. Except in compliance with the proceedings so prescribed, that court had no power to impose any tax for any period for the specific purpose of building a bridge, and it is to be noted that the law particularly declares that, in submitting the proposition for the issuance of bonds to the electors of the county, the commissioners' court "shall distinctly specify the purpose for which the bonds are to be issued," and in the case before us the purpose was particularly specified. It is argued that it would have been only necessary to have specified that the purpose was for the building of a bridge or bridges as contradistinguished from a courthouse, or jail, or poorhouse, for the construction of which bonds likewise may be issued. Possibly a specification of a purpose to build a bridge or bridges generally would have been sufficient, but something more than this was done in the present case.. It was particularly specified in both the order of the commissioners' court and in the notices for the election that were issued and posted that the purpose of the bond issue was for building bridges at the Brock crossing and at or near the Bill Coffman crossing over the Brazos river. To hold that under such circumstances the commissioners' court of Knox county may lawfully divert the proceeds of the bond in question to a bridge or bridges at other points upon the Brazos river in Knox county, or over some other stream, would operate, as we think, as a fraud upon the voters participating in that election. As shown by the record, the election carried by a majority of something less than 100, and the allegations of the petition and the admissions made justify an inference that the bonds in question would never have been authorized at an election held for any such general purpose. As will be seen from the cases cited, appellants rely upon the case of Ardrey v. Zang, 60 Tex. Civ. App. 295, 127 S. W. 1114. In that case an election was held authorizing the issuance of $200,000 for the purpose of purchasing grounds and building schoolhouses in the city of Dallas. A board of education interested in having the proposition carried represented to the voters, through school children, circulars, etc., that part of the proceeds of the bonds would be used in the construction of a school building in Oak Cliff, and Zang instituted the suit, alleging that the proceeds in part were to be diverted

from the schoolhouse in Oak Cliff. The Court of Appeals for the Fifth District—and a writ of error was refused by our Supreme Court—held that the board of education, having no controlling power to initiate or submit to the people the question of raising money for the issuance of bonds, could make no controlling representations in the matter. It was said:

"The representations were not embodied in the proposition submitted by the commissioners to the people to vote upon. The commissioners were not bound to submit the exact proposition of the board of education, but they had the right to submit such a proposition as they deemed best, and they did submit to the people the proposition whether or not bonds should issue 'for the purchase of grounds, and the construction and erection of grade school buildings therein for the city of Dallas.' This proposition did not specify any particular piece of ground to be purchased, nor any particular part of the city where it was to be located. The proposition of the commissioners was plain and unambiguous, and from it the voters had a right to expect that the money arising from the bonds would be used in the purchase of grounds for the erection, etc., for school buildings, but, as to any particular site being purchased in any particular location, they could only trust to the discretion of the board of education for the selection of any such site. So long as the board of education was acting within the terms of the proposition submitted by the commissioners and balloted on by the people —that is, was using the funds derived from the sale of the bonds for purchasing sites and erecting buildings thereon—it was acting within the scope of the power conferred on it by the city charter, and there was no legal diversion of the funds, and the courts should not interfere by enjoining the acts of the board in exercising its discretion in complying with the proposition submitted to the voters."

Of the same meaning and effect is the case of City of Austin v. Nalle, 85 Tex. 520, 22 S. W. 668, 960. The action of the commissioners' court there complained of was not embodied in the proposition submitted at the election authorizing the issuance of the bonds. Both decisions emphasize this point. Neither decision authorizes an inference that the funds involved in those cases could be lawfully diverted to any purpose not specified in the propositions submitted to the electors for determination. Here as already noted, the places at which and the river over which the bridges were to be built were particularly specified and submitted to the voters, and after the declared result, as alleged in the plaintiffs' petition, there was no longer left any field for an exercise of the asserted power or discretion of the commissioners' court. That court could thereafter, in relation to the subject-matter of that election, only carry into effect the result. See Kimberly v. Morris, 87 Tex. 637, 31 S. W. 808. The trend of modern thought and legislation is in the direction of giving the people an enlarged and more direct voice in governmental proceedings affecting their interests, and we think a liberal construction of these laws, embodying as they do the law under consideration, must be given so as to effect the purposes intended, and, so construing the statutes un-

der consideration, we think appellants' contentions in this case cannot be maintained.

Appellants also incidentally contend that the Decker or McQuistion crossing is "near" the Bill Coffman crossing over the Brazos river, within the purview of the notices of the election under consideration, but we think this so obviously otherwise that we give this contention no weight.

We conclude that on the whole the court committed no error in overruling appellants' general demurrer and in rendering judgment for appellees. The judgment below will accordingly be in all things affirmed.