## SAN ANTONIO INDEPENDENT SCHOOL DIST. v. HUDSON et al.

### No. 9975.

Court of Civil Appeals of Texas. San Antonio.

March 18, 1936.

Rehearing Denied April 1, 1936.

528

Hicks, Dickson & Lange, N. A. Quintanilla, and B. W. Teagarden, all of San Antonio, for appellant.

Boyle, Wheeler, Gresham & Terrell, of San Antonio, for appellees.

MURRAY, Justice.

This suit was instituted by C. C. Hudson and five other persons seeking the issuance of a temporary injunction, and on final hearing a permanent injunction, against the San Antonio independent school district and others, restraining them from spending the proceeds derived from the sale of certain bonds, for any other purpose than the construction of a senior high school building on a site located near Astor and South Pine streets.

It is alleged that at an election held on the 18th day of December, 1930, the above-mentioned bonds were authorized by the qualified property taxpaying voters of the San Antonio independent school district; that the petition and order for the election stated that the bonds were "for the purpose of obtaining funds for constructing, remodeling, equipping, and repairing public free school buildings and the purchase of necessary sites therefor within the limits of said district, such buildings to be constructed of other than wood material; * * *" that on December 16, 1930, two days before the election, the trustees comprising the San Antonio board of education of the San Antonio independent school district met and unanimously adopted a resolution specifically setting forth just how the funds to be derived from the sale of these bonds would be spent. Among 33 other items contained in this resolution was the following: "To build a new senior school on the site at Astor and South Pine Streets to accommodate pupils from the Poe and Page Junior Schools. Cost $750,000.00 approximately."

It is further alleged that this resolution was published on December 17, 1930, in the daily newspapers of San Antonio and read and relied upon by the appellees herein (plaintiffs below), and others similarly situated; that long after said bonds were voted, to wit, on December 3, 1935, the present board of education of the district has attempted to abandon the construction of a senior school on the site at Astor and South Pine streets and to divert approximately $285,000 of the funds remaining to the construction of improvements elsewhere than as provided in said resolution of December 16, 1930.

Upon a hearing, the trial judge granted a temporary injunction and the board of education of the San Antonio school district have prosecuted this appeal.

It is contended that as all the parties against whom this injunction was granted did not perfect appeals this court does not have jurisdiction to pass upon the appeal presented by the San Antonio independent school district. We overrule this contention. It is perfectly plain that the board of education of the San Antonio independent school district is the only proper body to determine how these funds are to be expended. All other defendants below, such as the bank and business manager of the

This appeal presents one main and controlling legal question, which is: "Did the resolution of Dec. 16, 1930, constitute in effect a contract with the qualified voters of the school district which could not thereafter be set aside?"

It is clear that if the petition, order for, and notice of, the election had provided that the funds derived from the sale of the proposed bonds were to be used in building a senior high school building on the site at Astor and South Pine streets, then and in that event the proceeds from the bonds could not lawfully have been used for any other purpose. It is further clear that, the fact that the petition, order, and notice did not contain such a restrictive provision as to the expenditure of the proceeds of the bonds, the board of education could use its discretion in spending this money, so long as it was expended for the general purposes contained in the petition, order, and notice, unless the resolution of December 16, 1930, had the effect to establish a contractual right on the part of the voters to have said funds expended as provided for in said resolution.

The general rule is that the purposes for issuing bonds stated in the petition, order, and notice of the election determine for what purposes the bonds were issued, and that the voters have no right to rely upon any other statements or orders for ascertaining the purposes for which bonds are to be issued. Grayson County v. Harrell (Tex.Civ.App.) 202 S.W. 160; Cannon v. McComb (Tex.Civ.App.) 268 S.W. 999; Ardrey v. Zang, 60 Tex.Civ.App. 295, 127 S.W. 1114; City of Austin v. Nalle, 85 Tex. 520, 522, 22 S.W. 668, 671, 960; Moore v. Coffman, 109 Tex. 93, 96, 200 S. W. 374.

However, we find exceptions to this general rule in Black v. Strength, 112 Tex. 188, 246 S.W. 79. In that case it was held that an order passed by the commissioners' court five days before the election, designating certain roads to be improved by the funds derived from the sale of the proposed bonds, created in effect a contract with the electorate to thus expend the proceeds of the bonds. It occurs to us that that case goes to the verge and should not be extended. In the case at bar, the absentee votes, if any, had all been cast before the resolution of December 16, 1930,

was passed and published. It was only published one day before the day of election. It is true that the order did not change the general purpose for which the bonds were to be voted, but it did change the general plan to a specific plan. Before the resolution the voters residing in the east, north, or west side of the city might have entertained hopes that a senior high school building would be built near them, and for that reason vote for the bonds, but after the resolution, if it be given the effect contended for by appellees, they could have had no such hope.

If a resolution such as we have in this case is to be regarded as creating in effect a contractual relation between the board and the electorate, then it should be passed and published before any voter has cast his ballot, and at such a time as the court may feel sure that at least a majority of the qualified voters knew of and understood the effect of such resolution. The contractual relation spoken of in the case of Black v. Strength, supra, must not be a contract with a small portion of the voters, but must be with at least a majority of the voters. It would not be practical to ascertain by hearing evidence just how many voters knew of the resolution and how many did not, or how many voted for the bonds because of the resolution and how many would have voted against the bonds if they had known of and understood the effect of the resolution. Therefore, the rule above laid down must be the test.

This court cannot say that the resolution herein, published one day before the polls opened and after the absentee voting, if any, had been completed, was known to and understood by the electorate generally, and that at least a majority of such electorate understood they were not voting for bonds the proceeds of which were to be used for the general purposes stated in the notice of election issued officially and published, as required by law, but that they were voting for bonds the proceeds of which were to be used for the restricted purpose stated in the resolution passed on December 16, 1930.

The rule contended for by appellees would require that a voter who desired to cast an intelligent vote could not rely upon the notice of the election, but he must be prepared for any change or modification which might be made at the eleventh hour, and it would further require of him the

ability to tell from a reading of these eleventh-hour news items in the newspapers, which were genuine and which were merely propaganda, and all this without time or opportunity to discuss the matter with his friends or examine the records to determine the genuineness of the report. If he concludes from the news item that the resolution in fact has been passed, he may desire to vote against the bonds; if he concludes it is only a false rumor, circulated at a time when it cannot be investigated, discussed, or inquired about and done designedly for the purpose of causing him to vote against something that he would otherwise be for, he may disregard the news item and vote for the bonds, but with the assurance that if his conclusion is wrong he has voted for something that he was in fact against.

Certainly, the holding in Black v. Strength, supra, should not be extended, and it occurs to us that, due to the large number of absentee votes that are now being cast in every election, no resolution of this nature passed after the absentee voting, if any, has begun should be regarded as in effect creating a contractual relation between the board and the electorate. It might now be considered that when absentee voting starts the polls are open, and certainly no court would hold that a resolution passed or published after the polls are opened and the voting begun could have the effect of creating a contractual relation between the board and the electorate.

No contention is made that the school board could not change their order with reference to the scheme or plan of improving the school system of San Antonio, unless the passage of the resolution of December 16, 1930, had the effect of creating contractual rights. Having concluded that the resolution of December 16th did not create contractual rights which could be asserted by appellees herein, the temporary injunction was improvidently granted.

Accordingly, the order of the trial judge granting the temporary injunction will be reversed, and this cause remanded.

BOBBITT, J., did not participate in the decision of this case.