### GREEN-BOOTS CONST. CO. v. STATE HIGHWAY COMMISSION et al.

No. 21258.    Oct. 10, 1933.

Rittenhouse, Lee, Webster & Rittenhouse and T. G. Chambers, Jr., for plaintiff in error.

J. Berry King, Atty. Gen., and W. C. Lewis, Asst. Atty Gen., for defendants in error.

WELCH, J. This is a mandamus action instituted in the district court of Oklahoma county by plaintiff in error, Green-Boots Construction Company, a corporation, against the State Highway Commission of the state of Oklahoma and Lew Wentz, S. C. Boswell, and L. C. Hutson, composing the State Highway Commission of the state of Oklahoma, and J. Berry King, Attorney General. The parties appear in this court in the same relative position in which they appeared in the lower court, and will be hereinafter referred to as plaintiff and defendants.

Plaintiff seeks a writ of mandamus directing the members of the State Highway Commission to meet and allow plaintiff's claim in the sum of $155,576.44 as legal charges against the state of Oklahoma arising out of the construction of federal aid projects Nos. 106-A and 107-A in Washington county, Okla., pursuant to the terms of plaintiff's contract, u n l e s s said Commission should question the amount of said claim, in which event that they be directed to grant arbitration of said claim as provided by the terms of the contract with the State Highway Commission and the Attorney General acting as the board of arbitrators, each having one vote, and that they be required to set a day for the hearing on said arbitration and notify the plaintiff of the date thereof, and that they then proceed to grant plaintiff a full and complete hearing of all facts and evidence in support of the correctness of said claim, and that upon such hearing being had, they be required to render such judgment as they believe should be rendered as shown by the evidence.

Upon the petition filed, the court granted an alternative writ of mandamus as prayed therein. The defendants filed their return to the writ wherein they set forth that plaintiff's claim had, prior to the filing of petition, been duly and regularly presented to the State Highway Commission, and was by said Commission regularly disallowed; that subsequent thereto said claim was regularly submitted to the State Highway Commission and the Attorney General at the request of plaintiff, that upon the request of counsel for the board of arbitrators, the claim was amended, and thereafter a demurrer to the claim was filed on behalf of the Highway Commission, and after consideration thereon, the board of arbitrators sustained said demurrer and thereby made their award against said claim, and alleged that said finding and award is final and is res judicata. Further, the return contained the following:

"If it be held that these defendants and their predecessors in office have refused to act as arbitrators and that there has been no arbitration as contended by the plaintiff, then these defendants say: '(1st) That the refusal of the arbitrators to act has operated as a revocation of the submission; (2d) that the statute of limitation has run on plaintiff's demand; and (3rd) it is not made to appear that any dispute has arisen pertaining to the contracts or either of them or any part thereof'."

Upon final trial it was the view of the trial judge, as expressed in the record, that plaintiff was entitled to relief, but that none could be granted in this action, because the exact amount due plaintiff had not been theretofore fixed, either by express contract or by any action of the Highway Commission, and because the court could not in this action go into the details of the claim and the transaction therein referred to for the purpose of determining whether the details of the claim were true and correct, and fair and just in amount. The trial court, therefore, denied the relief sought, and the plaintiff appealed.

This, in its final analysis, is a suit to compel by mandamus the State Highway Commission of the state of Oklahoma to allow plaintiff's claim in a specific amount, or in the alternative to compel an audit or arbitration of the claim. Plaintiff's claim on its face is clearly based upon the contention that the items therein flow from and are contained within the provisions of two certain contracts theretofore entered into between plaintiff and the State Highway Commission for the construction of certain highways in Washington county; the facts upon which these contentions are based are clearly matters which should be determined by an audit. Plaintiff contends that by reason of the fact that the defendants reached a legal conclusion that the claim is not payable under the law, and further that in the hearing had hereon in the lower court plaintiff introduced evidence as to the correctness of the claim and the amount thereof, which was not denied by the defendants, and that defendants

have through the entire matter proceeded solely upon the theory that the claim, regardless of the details as to amount, etc., was not payable under the law, that such procedure on the part of the defendants is an admission of the correctness of the claim. We find the record substantially in accord with this contention, and the result as contended would probably be true if the controversy were between private parties who were not commanded by statute to proceed in accordance with some statutory provision to audit all claims. But the Legislature of this state in guarding the expenditure of highway funds has provided that the Highway Commission may not allow any claim until same has been audited by the Commission. By the terms of this statute the Highway Commission is bound to audit all claims, and is not permitted to avoid this duty either by contract or by conduct which would in the absence of such statute constitute a waiver or admission. We do not mean to say that the Highway Commission, in the absence of fraud or collusion, cannot agree upon the correctness of a claim or the details thereof, because it is presumed in that instance that they have performed their official and statutory duty, but here that presumption will not be indulged, as the record shows otherwise. From the entire record we reach the conclusion that the claim has never in fact been audited within the intention and meaning of the law, but was disallowed upon the theory and conclusion reached without an audit that the Highway Commission had no authority of law to pay the same. Whether or not there is authority of law to pay the same, or any part thereof, is a question of law, and a conclusion reached thereon may be examined by the court after an audit which discloses the pertinent facts.

Section 19 of chapter 48, Session Laws 1923-24 [O. S. 1931, sec. 10106], provides:

"The expenditure of the state highway construction and maintenance fund shall be under the control and supervision of the State Highway Commission, and all claims against this fund shall be paid on its itemized voucher forms, prepared by the State Highway Commission, and sworn to by the claimant, and all such claims, when duly signed and sworn to, shall be audited by the Commission, and upon final approval vouchers which are payable from the state highway fund, shall be forwarded to the Auditor of the state, who shall draw warrants therefor, and said warrants shall be paid by the State Treasurer from said highway construction and maintenance fund."

The law provides that the Highway Com-

mission may make contracts regarding the building and maintaining of highways, leaving the form thereof to the discretion of the Commission. It is provided in the contracts out of which this controversy has arisen that disputes between the contracting parties may be submitted to a board of arbitration composed of the State Highway Commission and the Attorney General, but in any event the Commission is not thereby relieved of the duty imposed by section 19, chapter 48, Session Laws 1923-24, supra, to audit all claims.

It appears from the record that the Highway Commission undertook to dispose of this claim by submission of the same to this board of arbitration created by the terms of the contract, and it further appears that this board of arbitration, composed in large part of the Highway Commission itself, disposed of the claim upon the Highway Commission's demurrer, by concluding that it had, under the terms of the contract, authority to act only in disputes arising between contracting parties with reference to the conduct of construction matters, and a further conclusion that the items of the contract were not payable under the law. The entire record clearly indicates a failure on the part of the Highway Commission to examine into the pertinent facts relating to the numerous items of the claim. The Highway Commission may not, by contract, waiver, omission or otherwise, avoid the mandatory duty to audit all claims; they might, if they desire by contract or otherwise, call in the Attorney General or any other person to assist or advise or give help in any manner in the auditing of claims, but the legal duty to audit rests upon the Highway Commission alone, and whatever action is taken in this regard must be shown to have been such an investigation of every pertinent fact relating to the claim or items thereof as to constitute an audit within the meaning of the law. Herein they have failed.

Webster defines audit as "an audience; a hearing; an examination in general; a formal or official examination and authentication of accounts, with witnesses, vouchers, etc."

The word "audit," as used in section 19 of chapter 48, Session Laws 1923-24, has a technical meaning, which is to examine, to pass upon, and to adjust. To audit implies a hearing, and upon the hearing to adjust, and an audit, to be complete within the meaning of the law, must be an examination of all pertinent facts in any way affecting the claim, and the items thereof and their sev-

eral sources, and a determination of the facts and circumstances tending in any way to establish or disprove the allegations or statements upon which the claim and the various items thereof are based, so that any proper authority having the right to inquire may determine from all of the facts and circumstances whether or not a proper conclusion has been drawn from the facts so determined, and whether or not the law has been properly applied thereto; an assembling of sufficient data from which an answer might be found to any pertinent question of fact relative to any part of the claim.

The instant claim is within its nature complicated, and is variously referred to by the parties as a claim for damages, loss, extra materials, extra work, etc. The question of whether or not it is a claim for damages or loss or extra work or extra labor, or either of these, or all or none, are conclusions to be reached from a finding of facts in the auditing thereof, and the manner in which this claim was handled was not such an audit as will enable the court to determine whether or not the claim is properly payable under the law.

The contract under which the construction of the roads here involved was begun and carried on is not definite as to details. It is not practically possible to construct extensive highways by contract exact as to every detail. Engineering changes must be made in most cases as the work progresses. All this we discussed in Leininger v. Ward-Beekman & Brooks, 139 Okla. 292, 282 P. 467, wherein it was said in syllabus paragraph 2:

"The nature of the work involved in the construction of a state highway system is such that no definite contract can be agreed upon, and a contract for such work must be sufficiently elastic to provide for the correction of engineering errors and changes in plans, and in order to provide therefor the State Highway Commission, in its discretion, is authorized to contract for such work on a unit basis; settlement under the contract to be computed at the completion of the work on a computation of the units of work performed."

In the body of that opinion the court said further:

"An examination of that contract discloses that it differs in many respects from an ordinary contract. Among others we find the following:

"There is no definite contract price, and the amount due thereunder can be determined only after completion of the work; there is no definite provision as to the amount of work, labor or material to be furnished or performed, and that is left to the direction of the engineer in charge; the contractor is required to give preference to honorably discharged soldiers, sailors, and marines, and there are definite provisions therein prohibiting the employment of minors or convict labor except as therein provided; the contract price is based on current published freight rates, and advances or reductions therein during the life of the contract are to be adjusted in determining the amount due under the contract, and the contract throughout is based upon 'approximate' quantities. * * *

"It is doubtful if any other arrangement could be made for such a contract. Certainly no definite contract price could be agreed upon without a preliminary survey of sufficient accuracy to warrant both the state and the contractor accepting the same as a basis for the contract. It appears to us that there must be sufficient elasticity in the agreement to provide for the correction of errors or changes in the plans. To attempt to fix a definite contract price would no doubt increase the cost either in engineering work or increased bids. 'Good business management,' as directed by the act, no doubt prompted the Highway Commission to adopt a system for contracting which has long been followed by railroads in construction work. which is recognized in the law and which is defined in Corpus Juris as 'Railroad Construction or Repair Contracts.'

"The State Highway Commission evidently construed its authority as sufficient to determine what sort of a contract should be entered into. Both sections 10 and 12, id. are silent as to the character of construction contracts, and, there being no statutory provision therefor, the determination of the character of the contracts to be entered into was of necessity with the State Highway Commission. * * *

"The State Highway Commission not only construed its authority to contract on a unit basis, leaving until the completion of the work a computation of the amount due under the contract, but to require the contractor to furnish or perform units necessary to the completion of the contract in excess of the engineer's estimate on which the contract was based. and to extend the scope of the work on the unit basis. thereby increasing the number of units to be furnished or performed over the number approximated at the time the contract was entered into. This record shows that in the past 10 years 29 of such extensions have been made, and the briefs herein show that at the time this work was performed no question had been raised as to the State Highway Commission having that authority, and that the State Auditor

had issued warrants in payment of such work.

"To deprive the State Highway Commission of that authority would be to deprive it of the right to make changes in the plans for road work which, during the process of construction, would appear to be for the best interest of the state and its highway system, and which might become absolutely necessary by reason of the discovery of conditions not known at the time the contract was made. Such a condition existed in the construction of the Panama Canal, where slides in the Culebra cut made necessary the removal of immense quantities of material not contemplated at the time the original excavation was made. Such a change would be necessary where, after the contract had been executed, a court should order changes made in the route of the highway, thereby requiring either additional or different work."

From this well-reasoned decision we regard it as settled law that such contracts as involved herein may be made by the Highway Commission, leaving matters to be determined as the work progresses, and at the conclusion of the work. This renders it more important in this character of cases that a full and complete audit be given of claims presented on contract, as plaintiff's claim in this case. And it must be said to have been within the contemplation of the parties to this contract that at the conclusion of the work the claim should be presented and thoroughly audited, heard and gone into in detail, in an effort to fairly and justly determine the amount due, if any, on the claim. This audit and hearing was not made or given either by the Highway Commission, as it was its legal duty to do, or by the arbitration to which it was agreed the matter of dispute might be submitted on demand.

In this case the trial court was convinced the plaintiff should be paid some part or all of its claim. This conclusion finds support in the record. A fair and thorough audit of the claim should disclose that part of the claim which is fair and just, if any, and that part which is not fairly and justly calculated and claimed, if any. This claim, or so much thereof as is fairly and justly calculated, should be paid in discharge of the contractual liability of the Highway Commission, and since the Highway Commission made no detailed audit of the claim, and since the Commission, while sitting with the Attorney General as a board of arbitration, participated in the making of the order sustaining its own demurrer to the claim and thereby prevented arbitration, there was no arbitration, and, therefore, there never was

any such examination of the claim or hearing thereon as is provided for by law, and as must have been in the contemplation of the parties when they contracted and proceeded with the highway construction under the contracts. This was in violation of the statutory duty of the Highway Commission to audit the claim, and in violation of its contractual duty to submit it to arbitration on demand.

In Dunham, City Clerk, v. Ardery, 43 Okla. 619, 143 P. 331, it is said:

"Where an inferior officer is vested with the exercise of discretion or judgment in the discharge of his duties, but in any case where his duties are clear, and there are not sufficient controverted facts to call for the exercise of discretion and judgment, or where such officer acts arbitrarily or fraudulently, a writ of mandamus may be issued to require the performance of his duty."

Whether or not an officer has acted arbitrarily is to be determined by the facts in the particular case. The record in the instant case shows that the Highway Commission has failed to act by auditing the claim as the law provides, and it cannot therefore be determined exactly whether the disallowance of the claim was or was not arbitrary. But it may be said that the acts of the Commission in failing to audit the claim, and in preventing the plaintiff from having an audit thereof, and a hearing thereon, do constitute arbitrary action and operate to deny plaintiff its rights.

Section 730, O. S. 1931, provides in part as follows:

"The writ of mandamus may be issued by the Supreme Court or district court, or any justice or judge thereof during term, or at chambers, to any inferior tribunal, corporation, board or person, to compel the performance of any act which the law specially enjoins as a duty, resulting from an office, trust or station. * * *"

In State ex rel. Dunlap, State Treas., v. Cruce et al., Commissioners of the Land Office, 31 Okla. 486, 122 P. 237, it is held that mandamus will lie to compel a board or commission to perform a clear duty imposed by law when such board or commission is acting as an executive department of the state. The court therein said:

"* * * And when there is doubt or ambiguity as to what the law is, that is a judicial question for the courts, which after it is determined, all must obey. * * * Therefore the construction of those statutes or constitutional provisions covering the matters herein is judicial in its nature, and for the court

to construe; and after they are construed, and the court decides where the funds belong, placing them there is purely a ministerial duty, for the performance of which, as a general rule, mandamus will lie."

The Highway Commission of this state is specially enjoined by law to audit all claims. The auditing of the claim is a mere ministerial duty and is clearly enjoined by law. The allowance or rejection of the claim is likewise a ministerial duty, the Commission being given no discretion in the allowance of illegal claims or the rejection of a legal claim. The Commission's action in applying the law to the facts disclosed by an audit is a proper subject of inquiry by the courts, and such Commission may be compelled by mandamus to properly apply the law to the facts thus disclosed.

If in making an audit of a complicated claim there should arise a dispute of fact, calling into play the discretion of the Commission in determining the true facts, still the Commission could be required to act, and to exercise its discretion and make a determination of the controverted question of fact, though it be true that the exact result of their acting would not be dictated by mandamus. This in keeping with the rule announced in Molacek v. White, 31 Okla. 693, 122 P. 523, where it was held in syllabus paragraph 3:

"When a discretion is vested in a public officer, the courts will by mandamus compel him to exercise that discretion, but will not direct how it shall be done, or what conclusions or judgment shall be reached."

Defendants urge that this is, in fact, an action brought against the state, and cannot be maintained except with its consent, citing Love v. Filtsch, 33 Okla. 131, 124 P. 31. The cited case was one wherein it was sought by mandamus to compel the State Auditor to approve a claim for rents. We desire to point out that in the Love v. Filtsch Case, supra, it was shown that the claim could not be paid, because there had been no appropriation of funds made for its payment. There was a specific statutory inhibition against the payment of same. Moreover, in Witt v. Wentz, 142 Okla. 128, 286 P. 796, it is pointed out that:

"The ancient doctrine that no suit against a sovereign can be maintained without the state's consent, has been modified, as applied to agents of the state, and under certain conditions."

Defendants further contend that the case of Witt v. Wentz, supra, is authority in support of their argument that plaintiff is not entitled to the relief sought. In this last-cited case this court merely recognized the authority of the Highway Commission to refuse to consummate a road contract which under the law they were not bound to consummate.

Defendants also cite Green-Boots Construction Co. v. State Highway Commission, 139 Okla. 108, 281 P. 220. There was an effort in that case to review by certiorari the action of a board of arbitration which was a creature of contract rather than a commission created by law with specific duties provided by statute. The instant case is a suit in mandamus against the State Highway Commission of the state, one of the defendants herein, which is a commission created by law, and upon which the law has placed certain specific duties, to compel it to perform its statutory duty.

In the defendants' brief it is suggested that plaintiff's action ought to be barred by the statute of limitation, but defendants devote no argument to this contention and cite no authority. On the contrary, we observe the case of Duke, Mayor, v. Turner, 204 U. S. 623, 51 L. Ed. 652, which affirms the decision of the Supreme Court of Oklahoma in affirming the district court of Logan county, Okla. In deciding this case the Supreme Court of the United States, in speaking in reference to a mandamus action in the district court of Oklahoma, said:

"The proceeding in mandamus is not a civil action, and therefore not within the terms of the statute of limitation."

The authorities seem to recognize the rule that the writ in mandamus might be properly denied for laches where the relator "has slept upon his rights an unreasonable time, particularly when the delay has been prejudicial to the rights of the respondent." (Duke v. Turner, supra.)

In the case at bar no suggestion is made that the plaintiff has been guilty of any sleeping upon rights. Upon the contrary, the record discloses that the plaintiff has prosecuted almost continuous litigation in one form or another to protect and obtain its rights since the claim was filed. Plaintiff made diligent effort, first, to obtain payment of its claim by the Highway Commission; second, to obtain a complete audit of the claim; third, to obtain a fair hearing on its claim by the arbitrators provided for by the contract; fourth, to obtain review in this court by "certiorari" of the action, or failure to act, of the board of arbitrators; fifth, in the instant action in the district

294

court to obtain the writ of mandamus requiring the Highway Commission to pay or audit and allow and pay the claim, or submit any disputed item to arbitrators. The record discloses no laches, and we find no merit in defendants' suggestion that the plaintiff's action is barred.

We do not at this time pass finally upon the question whether or not the claim, or any fixed portion thereof, is legally payable, nor could we do so now for the reasons heretofore stated. But it is clear that the claim merits the careful attention of the Highway Commission, and that it must be acted upon and handled by the Commission as the law directs.

The cause is, therefore, reversed and remanded, with directions to the trial court to issue a peremptory writ of mandamus directed to the State Highway Commission of the state of Oklahoma, with command to fully audit the plaintiff's claim and to allow all of the same, or such portion thereof as shall be found to be fair and just under the contract, if any, and with command, further, that in case any portion of such claim is disallowed, upon demand of the claimant all disputed matters be fairly submitted to arbitration as provided by the contract, and as prayed for by plaintiff, and with further command to proceed in all respects in reference to the allowance and payment of said claim in whole or part consistent with this opinion.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, BAYLESS, and BUSBY, JJ., concur. OSBORN, J., absent.