STATE HIGHWAY COMMISSION et al. v. GREEN-BOOTS CONST. CO.

No. 29958.    July 8, 1947.

Rehearing Denied Dec. 2, 1947.

*187 P. 2d 209.*

Mac Q. Williamson, Atty. Gen., and Houston W. Reeves and P. C. Lackey, Asst. Attys. Gen., for plaintiffs in error.

Rittenhouse, Webster, Hanson & Rittenhouse, John Barry, and Tom C. Chambers, all of Oklahoma City, for defendant in error.

JOHNSON, Special J. This case sequels the persistent efforts of the Green-Boots Construction Company and its predecessor, extending over a period of more than 20 years, to enforce a claim for payment of $155,576.44 covering alleged items of loss incurred in the construction of approximately 15 miles of Bates type reinforced concrete pavement between Dewey, Okla., and the Kansas line in Washington county, Okla. The construction work was performed in two sections, known as Oklahoma Federal Aid Projects Nos. 106-A and 107-A, respectively. Each project was covered by a separate contract entered into on October 11, 1923, between the claimant and the State of Oklahoma acting through Paul Nesbitt, Commissioner of Highways. The contracts estimate the total cost of the construction

as $201,766.89 on project No. 106-A and $231,828.48 on project No. 107-A. The final estimates on said projects show that the claimant has heretofore received payment for all units of construction specified in the contracts, calculated according to the unit prices set forth in the contracts. Said payments aggregate a total of $209,271.16 on project No. 106-A and $223,926.55 on project No. 107-A.

Two phases in the litigious voyage of this claim are revealed in Green-Boots Const. Co. v. State Highway Comm. et al. (1929) 139 Okla. 108, 281 P. 220; and Green-Boots Const. Co. v. State Highway Comm. et al. (1933) 165 Okla. 288, 25 P. 2d 783.

In the first case, supra, this court denied a writ of certiorari to review the action of the contractual board of arbitration in sustaining a demurrer to the claim.

In the second case, supra, this court found that the Highway Commission had failed to act by auditing the claim as the law provides, and remanded the cause to the trial court with directions for the issuance of a peremptory writ of mandamus to the Highway Commission commanding a full audit of the claim, and, if demanded by the claimant, that all disputed matters be fairly submitted to arbitration as provided by the contracts. Thereafter, and on November 22, 1933, the trial court, having considered the mandate from this court, issued a peremptory writ of mandamus, directed to the State Highway Commission and J. Berry King, Attorney General, which was returned and filed in the trial court of May 29, 1934. The return of said writ recites:

"That pursuant to said writ the State Highway Commission audited plaintiff's claim referred to in said writ, heard and considered evidence in support of and against said claim, examined all the records and files of the Department relative to said claim, and according to said audit, denied said claims. . . ."

The order of the board of arbiters was filed in the trial court on January 14, 1935. It appears from said order that the claimant demanded arbitration of its said claim and it was agreed by the arbiters, without objection from anyone, that the transcript of the testimony before the Highway Commission, together with the audit of the claim by said commission, and all exhibits and records referred to in said testimony should be admitted in evidence before the board of arbiters and considered by said board in arriving at its decision, and that the claimant was granted an opportunity to submit additional evidence.

H. N. Arnold, L. V. Orton, L. B. Selman, members, and Ed McDonald, member-secretary, of the State Highway Commission, in the order of the board of arbiters separately found that the claimant had introduced no additional evidence in support of its claim, ordered the adoption of the audit of the State Highway Commission, and denied the claim in its entirety.

The separate findings of the Attorney General in the order of the board of arbiters show that the Attorney General was unable to concur in the order of the State Highway Commission. He found that the claimant was delayed, interrupted, and interfered with in the failure of the Highway Commission to obtain right of way and to do other things consistent with the terms of the construction contracts to such an extent that some loss was sustained. He further found that there was no reason for him to approximate the amount of the loss, since the State Highway Commission had taken the positive position that the construction company was entitled to nothing.

On the 8th day of October, 1936, the claimant filed in said mandamus case in the trial court a pleading denominated "Application to Have Cause Set Down for Trial." In said application the claimant contended that the members of the State Highway Commission

had gone through the formality of allowing the claimant a hearing upon the audit of its claim, and had acted arbitrarily and capriciously, and that the cause should be set down for final hearing upon the merits.

Over the objection of the Highway Commission, its members, and the Attorney General, the trial court proceeded to hear and determine said claim, and on January 13, 1940, filed its opinion. In said opinion the trial court found that the defendants in the matter of the attempted audit and allowance of the claim and of the attempted arbitration in connection therewith, had acted arbitrarily and capriciously and ordered the issuance of a peremptory writ of mandamus to the State Highway Commission and the individual members thereof. On the same day the trial court entered its judgment in the form of a peremptory writ of mandamus, wherein the court found in part as follows:

"That the State Highway Commission acted arbitrarily and capriciously in refusing to audit and allow the claim. . . ."

and:

"That the State Highway Commission, acting through its several Boards throughout the history of this litigation, has steadily and consistently refused to give a fair and impartial hearing, and that to make any order directing the State Highway Commission to reconsider or re-audit this claim would be futile and useless, and that it is, therefore, the duty of this court to fix the amount of the claim which the State Highway Commission should have allowed under the evidence and record in this case . . . ."

and ordered, adjudged, and decreed:

"That the State Highway Commission of the State of Oklahoma, and S. H. Singleton, H. E. Bailey and George Meacham, constituting and composing the State Highway Commission of the State of Oklahoma, be and they are hereby directed to allow the claim of the plaintiff in the sum and amount of $90,000.00, with interest at six per cent per annum from the 1st day of May, 1934, and to prepare a proper voucher evidencing the allowance and approval of said claim in such amount, and cause the same to be certified and delivered to Frank C. Carter, State Auditor of the State of Oklahoma, and the State Auditor is hereby directed and commanded to prepare a proper warrant drawn against the State Highway Construction and Maintenance Fund in favor of the plaintiff for the sum and amount of $90,000.00, with interest at six per cent per annum from the 1st day of May, 1934 in payment of said claim, and cause the same to be delivered to the plaintiff."

The State Highway Commission, the individual members of the State Highway Commission, and the Attorney General of the State of Oklahoma, plaintiffs in error here, are seeking a review and reversal of the said judgment of January 13, 1940, upon the basic ground that the trial court was without power or jurisdiction to render said judgment.

The judgment and writ of January 13, 1940, is predicated in part upon the finding of the trial court that the contractual board of arbitration acted arbitrarily and capriciously. It is pertinent, therefore, to consider what powers and duties are enjoined by law upon the State Highway Commission and the Attorney General, and we reiterate with approval the following language of Mr. Justice Riley, speaking for the court in the first Green-Boots Case, supra:

"The power of the Highway Commission is derived from the statute. The statute provides that the road funds be used for building and maintaining the roads and for no other purpose. The highway commission has no power or authority to determine the damage suffered by a contractor because of the wrongful acts of the commission, nor to make payment therefor from the public funds, even admitting such damages.

"The Highway Commission, in agreement with the contractor, created a

board of arbitration. That board's progenitor was the contract—not the statute. It was neither a court, board, nor commission deriving its existence from the statute. . . .

"The Attorney General and the Highway Commission, when acting as arbitrators, were not acting within the scope of their respective duties as defined by law, for the law prescribes no such duties to be performed individually or jointly."

The statutes of the State of Oklahoma provide only for the issuance of a writ of mandamus, to compel the performance of any act which the law specifically enjoins as a duty, resulting from an office, trust, or station. 12 O. S. 1941 §1451. We conclude, therefore, that a writ of mandamus does not lie to compel the State Highway Commission and the Attorney General to act as arbiters upon disputes arising from highway construction contracts. Since the State Highway Commission and the Attorney General could not be compelled by mandamus to arbitrate such disputes, it follows that the trial court was without power by way of mandamus to review or correct their action and conduct in failing to agree and make an award.

The State Highway Commission, however, is expressly required by section 19, ch. 48. S. L. 1923-1924, infra, to audit all claims against the State Highway Construction and Maintenance Fund. The agreement of the Highway Commission to submit all disputes between the contracting parties to arbitration could not, in any event, relieve said commission from its positive statutory duty to audit all claims. This court so held in the second Green-Boots Case, supra.

The trial court, having issued the writ of November 22, 1933, commanding a full audit of the claim by the Highway Commission as directed by the mandate of this court in the second Green-Boots Case, supra, retained the unquestioned power and authority to enforce and carry that command into effect. Plaintiffs in error, however, urge that the judgment and writ of January 13, 1940, constituted a review on the merits by the trial court, of the action and exercise of discretion of the Highway Commission in auditing and disallowing the contractor's claim, and that the trial court was without power and authority so to do.

Section 10106, O. S. 1931, originally enacted as section 19, ch. 48, Session Laws 1923-24, reads as follows:

"The expenditure of the State Highway Construction and Maintenance Fund shall be under the control and supervision of the State Highway Commission, and all claims against this fund shall be paid on its itemized voucher forms, prepared by the State Highway Commission, and sworn to by the claimant, and all such claims, when duly signed and sworn to, shall be audited by the commission, and upon final approval vouchers which are payable from the state highway fund, shall be forwarded to the Auditor of the state, who shall draw warrants therefor, and said warrants shall be paid by the State Treasurer from the said State Highway Construction and Maintenance Fund."

In 6 C. J. 847, it is said the word "audit" means:

" . . . to hear, examine, and determine a claim, by its allowance or its disallowance or rejection in toto or in part, the word implies the exercise of judicial discretion, and while sometimes restricted to a mere mathematical process, it is generally extended to include the investigation, weighing of evidence, and deciding whether items should or should not be included."

In Etzold v. Board of Commissioners, 141 N. E. 617, the court said:

" 'to audit' means to adjust; to allow or reject, to ascertain; to determine; to decide; to pass upon; to settle; to hear, examine, and determine a claim, by its allowance or rejection in whole or in part; and implies the exercise of discretion."

In the second Green-Boots Case, supra, this court, speaking through Mr. Justice Welch, said:

"The word 'audit,' as used in section 19 of chapter 48, Session Laws 1923-24, has a technical meaning, which is to examine, to pass upon, and to adjust. To adjust implies a hearing, and upon the hearing to adjust, and an audit, to be complete within the meaning of the law, must be an examination of all pertinent facts in any way affecting the claim, and the items thereof and their several sources, and a determination of the facts and circumstances tending in any way to establish or disprove the allegations or statements upon which the claim and the various items thereof are based, so that any proper authority having the right to inquire may determine from all of the facts and circumstances whether or not a proper conclusion has been drawn from the facts so determined, and whether or not the law has been properly applied thereto; an assembling of sufficient data from which an answer might be found to any pertinent question of fact relative to any part of the claim."

Following that statement the court discussed the nature of the contract under which the construction of the roads here involved was begun and carried on, the nature of the instant claim, and said further:

"If in making an audit of a complicated claim there should arise a dispute of fact, calling into play the discretion of the commission in determining the true facts, still the commission could be required to act, and to exercise its discretion and make a determination of the controverted question of fact, though it be true that the exact result of their acting would not be dictated by mandamus. This in keeping with the rule announced in Molacek v. White, 31 Okla. 693, 122 P. 523, where it was held in syllabus paragraph 3:

" 'When a discretion is vested in a public officer, the courts will by mandamus compel him to exercise that discretion, but will not direct how it shall be done, or what conclusions or judgment shall be reached.' "

The rule is well established that a writ of mandamus may not lawfully issue to control a decision of an officer vested with discretion, or to review, correct, or reverse an erroneous decision of such officer, even though there may be no other method of review or correction provided by law. Peed v. Cresham, 53 Okla. 205, 155 P. 1179; Broadwell v. Dirickson et al., 85 Okla. 242, 205 P. 751; Champlin v. Carter, 78 Okla. 300, 190 P. 679; Recknell v. State, 68 Okla. 264, 172 P. 1094; Norris v. Cross, 25 Okla. 287, 105 P. 1000; Witt v. Wentz et al., Highway Com'rs, 142 Okla. 128, 286 P. 796; 34 Am. Jur. 855, §§67 and 68; 34 Am. Jur. 943, §168.

There exists an exception to the rule above stated, in that mandamus lies to correct a gross abuse of discretion by boards which act wholly through fraud, caprice, or by purely arbitrary decision and without reason. Green-Boots Const. Co. v. State Highway Comm. et al., 165 Okla. 288, 25 P. 2d 783, supra; Bankers Union Life Ins. Co. v. Read, 182 Okla. 103, 77 P. 2d 26; King v. Guerra (Tex. Civ. App.) 1 S.W. 2d 373; Peerless Constr. Co. v. Bass, 158 Tenn. 518, 14 S.W. 2d 732. The rule is thus stated in 38 C. J. 598, sec. 74:

"While the contrary view has been upheld, the great weight of authority is to the effect that an exception to the general rule that discretionary acts will not be reviewed or controlled exists when the discretion has been abused. The discretion must be exercised under the established rules of law, and it may be said to be abused within the foregoing rule where the action complained of has been arbitrary or capricious, or based on personal, selfish, or fraudulent motives, or on false information, or on a total lack of authority to act, or where it amounts to an evasion of a positive duty, or there has been a refusal to consider pertinent evidence, hear the parties when so required, or to entertain any proper question concerning the exercise of the discretion, or where the exercise of the discretion is in a manner entirely futile and known by the officer to be so and there are other

methods which if adopted would be effective. If by reason of a mistaken view of the law or otherwise there has been in fact no actual and bona fide exercise of judgment and discretion, as, for instance, where the discretion is made to turn upon matters which under the law should not· be considered, or where the action is based upon reasons outside the discretion imposed, mandamus will lie. So where the discretion is as to the existence of the facts entitling the relator to the thing demanded, if the facts are admitted or clearly proved, mandamus will issue to compel action according to law. Nevertheless, the abuse of discretion must appear very clearly before the courts will interfere by mandamus."

In Boyle v. Rock Island Coal Mining Co., 125 Okla. 137, 256 P. 883, this court defined "arbitrary" as follows:

"Arbitrariness consists in conduct or acts based alone on one's will, and not upon any course of reasoning and exercise of judgment. If the matter, thing, or practice calling for the exercise of authority is one involving a controversy about which reasonable and experienced men differ, the authority exercised on either side of the controversy could not be said to be arbitrary."

In Control Board v. Floyd (Tex. Civ. App.) 117 S.W. 2d 530,· the court said at page 535:

" 'Arbitrary and capricious' in many respects are synonymous terms. Webster's International Dictionary, among other things, says 'capricious' means freakish, whimsical, fickle, changeable, unsteady, arbitrary. The testimony of the inspectors, although contradicted by the agent who is charged with having had the whisky, if believed by the administrator who heard the case, was sufficient to meet the requirements of the law, and as stated in the Jones Case, supra, is substantial evidence, and will defeat the contention that the board acted capriciously and arbitrarily in canceling the license."

In the case of In re Rogers, 47 Fed. Supp. 265, the court held:

"The court may not substitute its judgment for that of a local board charged with performance of a duty under Selective Service Act, and, if its finding is supported by testimony, the finding will stand and may not be said to be arbitrary and capricious.' "

See Words and Phrases (Perm. Ed.) for all other definitions of "arbitrary and capricious."

In the light of the principles of law above announced, we have made an examination of the record to determine whether the acts and conduct of the Highway Commission in the audit of the claim bring this case within the exception to the rule above stated.

The members of the Highway Commission having been served with the peremptory writ of mandamus commanding an audit of the claim, proceeded to hold hearings .and take testimony on behalf of the claimant and the Highway Commission in relation to the claim. Three days were devoted to said hearings, which, exclusive of exhaustive documentary evidence, comprise 234 pages of the record. The evidence further reveals that prior to said hearing the members of the Highway Commission made an inspection tour of the project, to ·acquire knowledge and information concerning the claim.

By the terms of both contracts upon which the claim under consideration is predicated, the conditions and provisions of the standard highway specifications of 1921 became a part and parcel of the contracts as completely as if same were included therein. Each of the contracts is in the form commonly known as "railroad construction contracts." They do not provide any definite sum of money for the performance, but merely provide that the contractor will furnish all work necessary to complete each of the projects as shown on the plan or as changed, and will accept in full payment for such work the unit prices set out in said contracts.

By the provisions of said contracts the contractor agreed to accept in full

payment for all work and material necessary to complete the projects involved 30c for each cubic yard of earth excavated; 70c for each cubic yard of loose rock excavation; $1.10 for each cubic yard of solid rock excavation; 2½c for each cubic yard of excavated material hauled for each 100 feet beyond a free haul limit of 500 feet; 27c for each cubic yard of borrow; $2.2875 for each square yard of pavement; $19 for each cubic yard of class "A" concrete; $18 for each cubic yard of class "B" and class "C" concrete; 5½c for each pound of reinforcing steel; and $5 per lineal foot of handrail.

The contractor was not to be paid for any work or material as such, but under the provisions of said contracts was to accept in full payment for work performed and materials furnished the unit prices above set forth, the total amount to be paid under the contracts depending entirely upon the number of the foregoing units contained in the completed projects as measured and determined by the State Highway Engineer.

The 1921 Standard Highway Specifications which, under the provisions of the executed contracts, are a part and parcel of said contracts, provide in part as follows:

"32. Alteration of Plans or of Character of Work. The Engineer reserves the right, with the approval of the Commissioner, to make such alterations in the plans or in the character of the work as may be considered necessary or desirable from time to time to complete fully and perfectly the construction of the work, provided such alterations do not change materially the original plans and specifications, and such alterations shall not be considered as a waiver of any condition of the contract, nor to invalidate any of the provisions thereof. Should such alterations in the plans result in an increase or decrease of the quantity of work to be performed, the contractor shall accept payment in full at the contract unit prices for the actual quantities of work done; or should such alterations in the character of the work be productive of increased cost or result in decreased cost to the contractor, a fair and equitable sum therefor, to be agreed upon in writing by the contractor and the commissioner before such work is begun, shall be added to or deducted from the contract price, as the case may be. No allowance will be made for anticipated profits.

"33. Additional work. The Contractor shall perform such work, in additional quantities other than those designated in the approximate estimate, as may be deemed necessary to complete fully the work as planned and contemplated and shall receive for such additional work payment in full, at the prices shown in the contract and in the same manner as if such work had been included in the original estimate of quantities.

"34. Extra work. The contractor shall perform extra work, for which there is no quantity and price included in the contract, whenever, to complete fully the work as contemplated, it is deemed necessary or desirable, and such extra work shall be done in accordance with the specifications therefor, or in the best workmanlike manner as directed. This extra work shall be paid for at a unit price or lump sum to be agreed upon previously in writing by the contractor and commissioner, or where such a price or sum cannot be agreed upon by both parties, or where this method of payment is impracticable, the Commissioner may order the Contractor to do such work on a 'Force Account' basis.

"35. Force Account Work. All extra work done on a 'Force Account' basis will be paid for in the following manner:

"(a) For all labor, teams, and foremen in direct charge of the specific operation, the Contractor shall receive the current local rate of wage, to be agreed upon in writing before starting such work for each and every hour that said labor, teams and foremen are actually engaged in each work, to which shall be added an amount equal to fifteen per cent (15%) thereof.

"(b) For any materials used, the Contractor shall receive the actual cost

of such materials including freight charges, as shown by original receipted bills, to which cost shall be added a sum equal to fifteen per centum (15%) thereof.

"(c) For any machine-power tools or equipment, including fuel and lubricants, which it may be deemed necessary or desirable to use, the Engineer shall allow the Contractor a reasonable rental price, to be agreed upon in writing before such work is begun for each and every hour that said tools or equipment are in use on such work and to which sum no percentage shall be added. . . . ·

"71. Scope of Payment. The Contractor shall receive and accept the compensation, as herein provided, in full payment for furnishing all materials, labor, tools and equipment and for performing all work contemplated and embraced under the contract, also for all loss or damage arising out of the nature of the work, or from any action of the elements, or from any unforeseen difficulties or obstructions, which may arise or be encountered during the prosecution of the work, until its final acceptance by the Commissioner, and for all risks of every description connected with the prosecution of the work, also for all expenses incurred by, or in consequence of, the suspension or discontinuation of the said prosecution of the work as herein specified. . . ."

It is clear from the evidence, except as hereinafter set forth, that the claimant was paid at the contract price for all units of construction on both projects, and that claimant does not contend that any "force account work" was performed.

The claimant admits that all units or pay quantities included in the finished road as shown on the final estimates are correct, except extra reinforcing steel on fills of the alleged value of $676.54, and extra quantities of excavation of the alleged value of $1,078.52. The evidence reveals that the resident engineer by letter allowed the contractor the contract price of 5½c per pound for additional reinforcing steel. According to the testimony of C. W. McFerron, the construction engineer for the Highway Commission, payment was made at the contract price, for all quantities of additional reinforcing steel and excavation. The testimony of Tom Green conflicts with the evidence produced on behalf of the Highway Commission regarding those items, and, while creating doubt, does not clearly establish that the claimant was not paid in full therefor. The record refutes any contention that the commission abused its discretion or acted arbitrarily in disallowing those two items.

In the case of Witt et al. v. Wentz et al., 142 Okla. 128, 286 P. 796, the court held:

"Requisites for a writ of mandamus are (a) a clear legal right on plaintiff's part, (b) a plain legal duty on respondent's part wherein there is not involved the exercise of discretion, . . . "

See, also, Champlin v. Carter, 78 Okla. 300, 190 P. 679; Marland v. Hoffman, 184 Okla. 391, 89 P. 2d 287; Morrison v. Roberts, 183 Okla. 359, 82 P. 2d 1023; State ex rel. v. McCann, 107 Wis. 348, 83 N.W. 647; People ex rel. v. Dixon, 346 Ill. 454, 178 N.E. 914; Hooper v. Snow, 325 Ill. 53, 155 N.E. 765; State ex rel. v. Red River Parish, 16 La. A. 581, 135 So. 57; Hoffmeir v. Board of Health, 4 N.J.M. 839, 134 Atl. 610.

The instant claim covers loss alleged to have been incurred in the construction of concrete bridges, in grading, and in laying paving. The claimant asserts that the loss resulted from changes in plans, changes in location of road and bridges, and holdups due to failure to secure right of way. The claim sets forth what certain specified quantities of concrete, grading, and paving involved in the alleged loss should have cost, and the increased actual cost thereof attributable to the above conditions.

Tom Green, an official of the claimant, was the only witness produced

by the claimant in the hearing before the Highway Commission. C. W. Mc-Ferron, the resident engineer, Clay Hughes, the assistant resident engineer, and A. R. Bradshaw, the structure and concrete inspector, were produced as witnesses by the Highway Commission in said hearing. All of the witnesses were examined at length and the claim was fully covered by the testimony. The testimony of the witnesses produced by the Highway Commission was in sharp conflict with the testimony of Tom Green. The conflict in the evidence extends to the contentions of the claimant that it was delayed in the prosecution of the work by the delay of the commission in procuring right of way and by contemplated changes in plans; that it was required to deviate from the specified mixture for the pavement concrete; that it incurred expense for extra steel, extra asphalt, and extra labor in laying reinforced steel in paving over certain fills; that it incurred extra expense in moving equipment and crews from one point to another during the course of the construction as a result of changes in plans and delay in procuring right of way; that it was required to use a metal cap in the center seam of the pavement which was not shown on the specifications; and that it experienced loss as a result of the rejection of certain stone.

The hearing before the Highway Commission was concluded on March 26, 1934, and the case was taken under advisement. On the 1st day of May, 1934, the Highway Commission by its order and audit disallowed the claim in its entirety. Said audit contains lengthy findings relating to the nature and extent of the construction projects, the payment made under the contracts, the various items claimed as extra work and material, and the various items claimed as loss due to alleged changes in plans and failure to secure right of way.

In the case of Peerless Construction Co. v. Bass, supra, (158 Tenn. 518, 14 S. W. 2d 732), the Supreme Court of Tennessee considered a case somewhat analogous to the case at bar and held:

"Official act sought to be enforced by mandamus must be in ministerial act in order that writ may lie.

"Road-building contractor, under contract for construction of portion of state highway, held not entitled to mandamus against State Highway Commissioner to require payment of claim in excess of contract price, for additional expense incurred, where claim was unliquidated and disputed, since denial of claim involved exercise of discretion on part of commissioner, even if suit against commissioner was permissible under Const. art. 1, sec. 17, and Shannon's Code, sec. 4507, preventing suits against state."

In that case the road-building contractor contended that the State Highway Commission had no discretion to refuse to pay just claims against his department, as the law imposed upon him the duty to do so. In the body of the opinion the court announced what we believe to be the proper rule, to wit:

" 'The law imposes upon him the duty of paying just claims against his department' when and when only the justness of the claim is recognized by him in the exercise of the discretion vested in him by law, or when the justness thereof has been established by competent authority, so that it is the ministerial act of disbursement only which remains to be performed and not the exercise of discretion as to the existence of, or extent of, a valid obligation based on disputed facts."

The court then made the following pertinent observations:

"Just here is the difficulty confronting appellant. As already briefly outlined, it is a road-building company and entered into a contract in writing to build a portion of a state highway. It has been paid the price stipulated, but says that it did extra and additional work found to be necessary in the program of the contract work; that it was misled or misinformed as to the extent and character of certain basic condi-

tions, not deemed necessary to detail, and was forced to incur heavy extra and unforeseen expense, and that it is justly entitled to additional compensation therefor from the state through its Highway Commissioner. By a process of computation it fixes its excess claim at $12,328.50. However, the bill shows that the Highway Commissioner, quite plainly vested under the law with quasi judicial discretion, disputes and rejects the correctness of this claim and has refused payment. Quite obviously we have then an unliquidated account, disputed and disallowed by the authority vested with discretionary powers, investigation and determination of which must be first disposed of on the facts before the right may have applied to it the remedy invoked.

"Mandamus is a summary remedy, extraordinary in its nature, and to be applied only when a right has been clearly established, so that there, remains only a positive ministerial duty to be performed, and it will not lie when the necessity or propriety of acting is a matter of discretion. This is axiomatic and requires no citation of authority."

The record reveals a clear dispute of facts upon the merits of said claim. In reviewing the record it is not difficult to perceive how the learned trial judge with his broad experience in analyzing and weighing conflicting evidence could disagree with some of the findings of the Highway Commission. But the full and complete hearing which was accorded to the claimant by the Highway Commission, coupled with the conflict in the evidence relating to the facts and conditions upon which the commission exercised its discretion, clearly refutes any contention that the commission acted through fraud or that its decision was arbitrary and without reason. The trial court was therefore powerless to reverse or disturb the action of the commission.

The judgment of the trial court cannot be upheld for other reasons hereinafter discussed.

It follows from our foregoing analysis of the claim that the major portion thereof is in the nature of a claim for damages, unless such portion can be brought within the contract provisions governing "alteration of plans or of character of work" or "extra work," as defined by the specifications, supra. A careful examination of the record reveals that some of the items are clearly for damages caused by the alleged wrongful acts of the Highway Commission, and could in no event be brought within the purview of the construction contract. The claimant, however, in its brief asserts that many of the items involved in the claim cover extra work and material.

It may fairly be said that a substantial portion of the claim involves extra work and materials alleged to have been required as a result of changes in plans, delays in the prosecution of the work, and various requirements made by the engineer in charge. However, there is no contention or claim that the items of extra work and material are supported by written agreements between the contractor and the Highway Commission.

It was the opinion of the trial court, as set forth in the judgment entered herein, that the provisions in the specifications requiring contracts to be in writing were inserted therein for the benefit of either or both of the parties, and that, the engineer in charge, having ordered the changes and delays and thereby created the extra labor and use of material at the cost of the plaintiff, said provisions had been waived, and the trial court cited, in support thereof the case of City of Oklahoma City v. Derr, 109 Okla. 192, 235 P. 218. We find the Derr Case is not controlling in the factual situation here presented. That case involved a contract between a contractor and the municipality for the construction of a sewer system. The contractor performed the work which gave rise to the items involved in the claim, under verbal agreements made with the sewer committee (appointed by the city council), and the engineer, with the knowledge of the members of the city council. That

case did not rest upon a dispute between the parties as to whether the city authorized or directed the changes, or entered into the new contracts. The payment of the claim in that case was not subject to statutory audit and approval.

In the case of Kansas City Bridge Co. v. State, 61 S. D. 580, 250 N.W. 343, the Supreme Court of South Dakota considered provisions identical to those contained under "extra work" in the specifications, supra, and held:

"Contractor could not recover from state for extra work in construction of bridge in absence of prior written agreement by Highway Commission as required by contract (Rev. Code 1919, sec. 2109; Laws 1921, c. 128; Laws 1923, c. 204, sec. 6).

"State highway engineer could not waive provision of contract for construction of bridge that payment for extra work must be agreed upon previously in writing by Highway Commission."

In the body of the opinion the court said:

"Extra bills Nos. 3, 9, and 10 constitute claims for alleged extra work. There is no allegation or contention that this work was done on a 'force account' basis. Recovery therefor is sought upon the theory that it was extra work not included in the contract. 'Extra work,' as that term is used in connection with construction contracts, 'means work done not required in the performance of the contract; something done or furnished in addition to, or in excess of the requirements of the contract.' McQuillin on Municipal Corporations (2d Ed.) sec. 2093. The specifications for this work were expressly made a part of the contract, and section 42 thereof provides as follows: 'Extra Work. The Contractor shall perform extra work, for which there is no quantity and price included in the contract, whenever, to complete fully the work as contemplated, it is deemed necessary or desirable, and such extra work shall be done in accordance with the specifications therefor, or in the best workmanlike manner as di-

rected. This extra work will be paid for at a unit price or lump sum to be agreed upon previously in writing by the Contractor and the Commission, or where such a price or sum cannot be agreed upon by both parties, or where this method is impracticable, the Commission may order the Contractor to do such work on a 'Force Account' basis.' There is no contention or claim that any of this extra work was agreed upon in writing by the contractor and the commission prior to the execution thereof. The stipulation in construction contracts that compensation for extra work should be agreed upon prior to the performance of the work is not an unusual provision in this class of contracts. The reason therefor, no doubt, arises because of the frequent claims made by contractors for this so-called extra work. 'Municipal corporations have so frequently been defrauded by exorbitant claims for extra work under contracts for public improvements that it has become usual in insert in contracts a provision that the contractor shall not be entitled to compensation for extra work unless it has been ordered in a particular manner.' 19 R.C.L. 1077, sec. 362. Mr. Justice Clarke, in the Wells Brothers Case, 254 U.S. 83, 41 S. Ct. 34, 35, 65 L. Ed. 148, said: 'Men who take $1,000,000 contracts for government buildings are neither unsophisticated nor careless.' We think that statement applies to this present situation. Contractors engaged in the nature of the work here performed are neither 'unsophisticated nor careless'. It would have been a simple matter for the plaintiff to have agreed in writing with the commission for this extra work prior to the performance thereof. This provision of the contract is not an unreasonable provision, and we know of no reason why it should not be given effect. This court in the recently decided case of England v. State, 246 N.W. 628, gave effect to a similar provision in the contract involved in that case. See, also, City of Huntington v. Force, 152 Ind. 358, 53 N.E. 443; Watterson v. Mayor, etc., of Nashville, 106 Tenn. 410, 61 S.W. 782; Dolman v. Board of Com'rs of Kingman County, 116 Kan. 201, 226 P. 240; O'Leary v. Board of Port Com'rs for Port of New Orleans, 150 La. 649, 91 So. 139; Or-

pheum Theater Co. v. Kansas City Co. (Mo. Sup.) 239 S.W. 841; Hoskins v. Powder L. & I. Co., 90 Or. 217, 176 P. 124; City of Salisbury v. Lynch-Mc-Donald Const. Co. (Mo. App.) 261 S.W. 356; Kinney v. Mass. B. & Ins. Co. (Sup.) 175 N.Y.S. 398; Vaughan Const. Co. v. Virginian Ry. Co., 86 W. Va. 440, 103 S.E. 293. We quote a pertinent paragraph from the case of Plumley v. U.S., 226 U.S. 545, 33 S. Ct. 139, 140, 57 L. Ed. 342: "The other items for extra work were properly disallowed. The contract provided that changes increasing or diminishing the cost must be agreed on in writing by the contractor and the architect, with a statement of the price of the substituted material and work. Additional precautions were required if the cost exceeded $500. In every instance it was necessary that the change should be approved by the Secretary. There was a total failure to comply with these provisions, and though it may be a hard case, since the court found that the work was in fact extra and of considerable value, yet Plumley cannot recover for that which, though extra, was not ordered by the officer and in the manner required by the contract.' . . .

"The plaintiff contends that the facts alleged show a waiver of the stipulation that extra work should be provided for in writing. It is not necessary to decide in this case whether or not the Highway Commission could waive this provision. The facts alleged, and which are sought to be alleged by way of amendment to the complaint, disclose that the acts upon which it is sought to predicate a waiver, were acts of the state highway engineer. The acts of the engineer could not waive that provision of the contract which requires that the price to be paid for extra work must be 'agreed upon previously in writing by the contractor and the commission.' It is very generally held that, under construction contracts which provide that the architect or engineer may authorize extra work in writing, no authority is thereby given to the engineer or architect to waive this provision, and that under such contracts the contractor shall not be entitled to any compensation for extra work unless the engineer or architect gives a written order therefor. Langley v. Rouss,

185 N.Y. 201, 77 N.E. 1168, 7 Ann. Cas. 210, and note page 213. In this case, had the contract provided that the agreement for extra work should be between the contractor and the engineer, the engineer could not by his acts waive this provision and bind the commission. Certainly, then, when the contract provides that the agreement for extra work must be between the contractor and the commission, the engineer cannot by his acts waive that provision and thereby bind the commission. To hold that the engineer could by his acts waive this express provision of the contract would be to extend the authority of the engineer far beyond anything given him in the contract, and override that express provision of the contract reserving to the commission the power to stipulate for extra work. . . . "

The items contained in the claim covering extra work and material of the character specified by the contract provisions above quoted governing "alteration of plans or of character of work" or "extra work" are not supported by prior written agreements by the Highway Commission as required by those provisions of the contract. Following the decision in the case, supra, from South Dakota, we hold that the State Engineer in charge of the work could not waive the requirements for prior written agreements by the Highway Commission, contained in those provisions of the construction contracts, nor could the Highway Commission allow such items. It was therefore the ministerial duty of the commission to reject and disallow that portion of the claim.

Since that portion of the claim which involves extra work and materials does not meet the requirements of the contract, it follows that the entire claim, except the items covering additional reinforcing steel and excavation which were disallowed in the audit of the Highway Commission as hereinabove set forth, must be considered as one for the recovery of damages.

The State Highway Commission possessed no power or authority to allow or pay damages caused by wrongful

acts of the commission, according to the decision of this court in the first Green-Boots Case, supra.

Provision is made by section 67 of the specifications for extending the contract time for completion in the event of delays caused by any act or omission of the Highway Commission, but we fail to find in the contract or specifications any other method of adjustment for such delays. That provision indicated the exclusive remedy available to the claimant for delay caused by any act or omission of the Highway Commission. Hansen et al. v. Covell, 218 Cal. A. 622, 24 P. 2d 772; Norcross v. Wills, 198 N.Y. 336, 91 N.E. 803; Russell v. Bothwell & Swaner, 57 Utah, 362, 104 P. 1109.

Section 71 of the specifications, supra, furthermore provides that the contractor shall receive and accept the compensation provided in the contracts as full payment "for all loss or damage arising out of the nature of the work or from any unforeseen difficulties or obstructions" and "for all expenses incurred by, or in consequence of, the suspension or discontinuation of the said prosecution of the work . . . ." According to these provisions of the contract it is made clear that the contractor is not entitled to any monetary compensation for the items of loss specified in the claim.

We can put to one side cases such as Carter v. Miley, 187 Okla. 530, 103 P. 2d 933, wherein this court held:

"Mandamus is available to compel State Auditor to issue warrants where plaintiff shows a clear legal right to such relief."

In the Miley Case the amount claimed for services rendered under a contract with the State Highway Commission was fixed at a definite amount by the contract. The services had admittedly been performed. The claim for payment had been audited and allowed by the State Highway Commission, but the State Auditor contended that the statute making a specific appropriation for the payment of such services was invalid. The case left for determination by the court only the aforesaid question of law presented by the State Auditor.

Actions against state officers, who represent the state in action and liability, and in which the state, although not a party to the record, is the real party against which relief is sought and in which the judgment would operate to control the action of the state or subject it to liability or affect its property, are suits against the state which cannot be maintained without the consent of the state. Love v. Filtsch, 33 Okla. 131, 124 P. 30, 44 L.R.A. (N.S.) 212; Lovett v. Lankford, 47 Okla. 12, 145 P. 767; State Banking Board v. Oklahoma Bankers Trust Co., 49 Okla. 72, 151 P. 566; National Surety Co. v. State Banking Board, 49 Okla. 184, 152 P. 389; Wentz v. Potter, 167 Okla. 154, 28 P. 2d 562; Antrim Lumber Co. v. Sneed, 175 Okla. 47, 52 P. 2d 1040; Hawks v. Walsh, 177 Okla. 564, 61 P. 2d 1109; State Highway Comm. v. Brixey, 178 Okla. 118, 61 P. 2d 1114; Potter v. State Highway Comm., 184 Okla. 171, 86 P. 2d 293; Lankford v. Platt Iron Works, 235 U.S. 451, 59 L. Ed. 316; Farish v. State Banking Board, 235 U.S. 498, 59 L.Ed. 330.

The case of Love v. Filtsch, supra, involved a claim for rent due on a building in Guthrie, Okla., which had been leased to the state. The State Board of Public Affairs and the State Auditor disputed the amount claimed and refused to issue a warrant for its payment. A peremptory writ of mandamus was issued by the trial court. In reversing the judgment of the trial court this court held:

"A proceeding in mandamus brought for the purpose of requiring the auditing and allowance of a disputed claim for rent growing out of a private contract between the state and parties owning property occupied by state officials, is an action brought against the state, and cannot be maintained except with its consent."

In 34 Am. Jur., p. 944, sec. 170, it is said:

"Mandamus is an appropriate remedy to enforce performance by public officers of plain, legal, and imperative duties in respect to claims against the state, and such officers may be compelled, in a proper case, to draw warrants or orders for that purpose or to pay those already drawn. But the general rule that a state cannot be sued without its consent precludes a person having a disputed and unliquidated claim from maintaining mandamus proceedings against state disbursing officers to compel its payment. Likewise, where the auditing and allowance of claims against the state are intrusted to a particular officer, this involves the exercise of judgment and discretion and his action in refusing to allow a claim can not ordinarily be reviewed on mandamus. . . "

Our analysis of the facts and law, as hereinabove set forth, leads us to the conclusion that the writ and judgment of January 13, 1940, in effect, constitutes a judgment for the recovery of damages in an action and proceeding wherein the state, although not a party to the record, is the real party against which relief is granted, and that such action and proceedings have been maintained without the consent of the state, in violation of its sovereign immunity.

Accordingly, the judgment of January 13, 1940, entered by the trial court must be reversed, and the case dismissed. It is so decreed.

HURST, C.J., DAVISON, V.C.J., and CORN and GIBSON, JJ., concur. CUMMINS, Special J., concurs in result. BAYLESS and WELCH, JJ., dissent.